(No. 51676.—

*In re* CUSTODY OF GREGORY GENE HARNE *et al.* (Gene M. Harne, Appellant, v. Nancy Harne Johnson *et al.*, Appellees).

*Opinion filed September 19, 1979.—Rehearing denied November 30, 1979.*

David L. Martenson of Martenson, Donohue & Alexander, P.C., of Rockford, for appellant.

John G. Hooley, Public Defender, of Rockford, for appellee Nancy Harne Johnson.

Richard J. Moriarty and Bernard H. Shapiro, of Prairie State Legal Services, Inc., of Rockford, for appellees Ray and Alpha McManus.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This case concerns the custody of two minor children, Gregory Gene Harne, age 11, and Carrie Lynn Harne, age 9. Their parents, Nancy Harne Johnson and Gene M. Harne, were divorced on June 27, 1972, and Mrs. Harne was awarded legal custody of the children. In the fall of 1975, however, Mrs. Harne's parents took physical custody of the children when Mrs. Harne found herself unable to provide adequate care for them. On August 19, 1976, the father filed a petition for change of custody in the Winnebago County circuit court. The trial court granted the petition and modified the prior custody decree, by transferring legal custody of the children to the father, subject to reasonable visitation by the children's mother

and grandparents. On appeal, a divided Second District Appellate Court reversed and remanded (66 Ill. App. 3d 820) on the grounds that the trial court failed to comply with section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)). We allowed leave to appeal.

At the time of the trial court hearing, the two children, Gregory and Carrie, were living with the maternal grandparents, Mr. and Mrs. McManus, in a three-bedroom home in North Park. They are now approximately 70 and 68 years of age and are dependent upon social security and a monthly pension for support. The McManuses requested, and were granted, leave to intervene as defendants in this custody-modification proceeding.

The children's mother, Nancy Harne Johnson, is approximately 31 years of age, is remarried, and has a 2-year-old daughter by her present husband. Mrs. Johnson has lived in a number of different locations since her divorce. At the time of the trial court hearing she was living in a one-bedroom apartment above a tavern and was working as part of a daytime cleanup crew at the Poison Apple Disco. She testified that she did not presently desire to have actual physical custody of the children, but instead preferred to have the children stay with her parents. She did state, however, that should anything happen to her parents, she would take physical custody of the children.

The children's father is 32 years of age, remarried and has two children, aged 5 and 2, by his present wife. The family lives in a three-bedroom home in Loves Park. Apparently, all of the parties live within what might be described as the "Greater Rockford" area. At the time of the hearing, Harne had been employed as an assembly line worker at the Chrysler plant in Belvidere for 13 years. His wife testified that she supported her husband's request for custody of his two children and that she would be home full time to care for them should custody be granted to

him.

Following the trial court's action of transferring custody to the father subject to reasonable visitation by the mother and grandparents of the children, the grandparents filed a motion to reconsider. The basis for their motion was that the trial court allegedly failed to make certain findings of fact as required by section 610(b) of the Illinois Marriage and Dissolution of Marriage Act. The trial court denied the motion, a ruling which the appellate court held erroneous.

Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act, which is patterned after section 409(b) of the Uniform Marriage and Divorce Act, provides as follows:

> "(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:
>
> (1) the custodian agrees to the modification;
>
> (2) the child has been integrated into the family of the petitioner with the consent of the custodian; or
>
> (3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).)

The issues before us are: (1) whether a trial court judge must make an explicit finding that one of the three factors listed in section 610(b) exists before a valid child-custody-modification order can be entered, and (2) if so, has the trial court judge in the present case satisfied that statutory requirement here.

There is considerable disagreement among the decided cases on the proper interpretation of the statutory language contained in section 610(b). As we interpret the opinion of the appellate court in this case, the majority concluded that in order to enter a valid child-custody-modification order, a trial judge must make a finding that the modification is supported by one of the three elements of section 610(b). This view is shared by the Montana Supreme Court, which recently interpreted a virtually identical Montana statutory provision. (*Schiele v. Sager* (1977), —— Mont. ———, 571 P.2d 1142; *In re Custody of Dallenger* (1977), 173 Mont. 530, 568 P.2d 169.) The interpretation of the Montana court is that subsections (1) through (3) of section 610(b) "are jurisdictional prerequisites to modification which were placed there to serve the basic policy behind the entire section, the policy of custodial continuity. To allow these crucial issues to be resolved merely be references to the best interests of the children would seriously weaken the statute." *In re Custody of Dallenger* (1977), 173 Mont. 530, 534, 568 P.2d 169, 172.

The members of our appellate court in the first and fourth districts, however, have taken a contrary approach (see *e.g., De Franco v. De Franco* (1978), 67 Ill. App. 3d 760; *Drury v. Drury* (1978), 65 Ill. App. 3d 290; *Doyle v. Doyle* (1978), 62 Ill. App. 3d 786), which is best summed up by the court in *Doyle*:

"We do not agree that a specific finding with respect to subsection (b)(1) to (3) is required. Subsection (b) expressly requires that a finding should be made that a change in circumstances of the child or custodian has occurred and that a modification is necessary for the child's best interests. The express requirement for these findings indicates that no requirement was intended for more detailed findings on points (1), (2) or

(3) although such findings would be of aid to a court of review." 62 Ill. App. 3d 786, 791.

We believe that explicit findings by the trial court on points (1), (2) or (3) are not only "of aid to a court of review," but are indispensable requirements of the statute. The commissioners' note to section 409 of the Uniform Marriage and Divorce Act, which is the equivalent of our section 610, is enlightening on this point. It states in part:

> "Most experts who have spoken to the problems of post-divorce adjustment of children believe that insuring the decree's finality is more important than determining which parent should be the custodian. See Watson, The Children of Armageddon: Problems of Custody Following Divorce, 21 Syracuse L. Rev. 55 (1969). This section is designed to maximize finality (and thus assure continuity for the child) without jeopardizing the child's interest. ***
>
> Subsection (b) in effect asserts a presumption that the present custodian is entitled to continue as the child's custodian. It does authorize modifications which serve the child's 'best interest;' but this standard is to be applied under the principle that modification should be made only in three situations: ***. The last phrase of subsection (b)(3) is especially important because it compels attention to the real issue in modification cases. Any change in the child's environment may have an adverse effect, even if the noncustodial parent would better serve the child's interest. Subsection (b)(3) focuses the issue clearly and demands the presentation of evidence relevant to the resolution of that issue." 9A Uniform Laws Annotated sec. 409, Commissioners' Note (1973).

We believe that section 610(b) of the Illinois Marriage and Dissolution of Marriage Act, like section 409(b) of the uniform act, reflects an underlying policy favoring the finality of child-custody judgments, and making their modification more difficult. The policy evident in the commissioners' notes is also apparent in the provision of section 610(a) that "[n]o motion to modify a custody judgment may be made earlier than 2 years after its date,

unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." (Ill. Rev. Stat. 1977, ch. 40, par. 610(a).) The aversion to custody changes is further manifested by the requirement in section 610(b) that the custodian previously appointed shall be retained absent the conditions specified in sections 610(b)(1), (2) or (3). By creating a presumption in favor of the present custodian, the legislature has sought to promote a stability and continuity in the child's custodial and environmental relationships which is not to be lightly overturned.

In view of these provisions, we do not believe that the legislature intended to allow modification of child-custody judgments without a finding by the trial court that one of the statutory prerequisites existed. Furthermore, absent such a judicial finding, a court of review would be unable to determine the basis for a modification order and would be left to speculate on the grounds relied upon by the trial judge. This does not appear to us to have been the intended result of section 610. Only if the trial court sets forth explicit findings that subsection (1), (2) or (3) applies, can the appellate courts intelligently review trial court judgments and the exercise of such trial court discretion as remains in this area.

Having determined that section 610(b) requires a trial judge to make explicit findings that either subsection (1), (2) or (3) is applicable prior to modifying a custody judgment, we consider whether this requirement was satisfied here. We believe that it was. Although the trial judge did not articulate the necessary finding at the conclusion of the hearing when he orally granted the petition for change of custody, he did make the necessary finding in his written order and also in response to the intervenors' motion for reconsideration. In his written order, the trial judge found that "the Respondent does not

have the stability or ability that is necessary to maintain and care for the children, that they have been living with their grandparents rather than the Respondent, and that under these circumstances, their present environment could seriously affect their physical, mental, moral or emotional health. Therefore, the Court finds that it is in the best interests of the minor children that the Petitioner have their care, custody and control." Also, in response to the motion for reconsideration filed by the intervenors, the trial judge found that "it endangered their moral health and mental health since Grandma and Grandpa are too old to take care of them." We think these findings were sufficient to satisfy the statutory requirements. Consequently, although we agree with the appellate court's conclusion that specific findings on subsections (1), (2) or (3) are required, we disagree with its determination that the trial court findings in the present case were inadequate.

The mother and grandparents argue that there was not a sufficient showing of changed circumstances affecting the best interests of the children to justify a change in custody. On the contrary, we think that there was substantial evidence indicating that the long-range interests of the children would be served by a modification of the prior custody judgment. The children's mother, the legal custodian, had given her parents actual physical custody of the children. The mother clearly was unable to assume responsibility for the care of her children, and her parents' age made it quite unlikely that they could continue indefinitely to raise the children, despite their willingness to do so. On the other hand, the father of the children was remarried, steadily employed, and owned a three-bedroom house. His present wife wanted the children to live with them. Upon these facts, we do not think it can be said that the trial judge's order was against the manifest weight of the evidence.

Finally, the respondent and intervenors argue that the

trial court erred in refusing to allow them to introduce evidence of the father's failure to make court-ordered child-support payments. Certainly such evidence would be relevant in a hearing on the father's petition for custody of the children. Respondent's sole attempt at introduction of evidence on this subject, however, was through cross-examination of the father. The trial court refused to permit questioning on this subject because it was beyond the scope of the direct examination and was not an issue raised by the pleadings. We do not regard that ruling as error in view of the fact that the question of child-support payments was clearly beyond the scope of the direct examination, and respondent's counsel could have introduced testimony on the issue through direct examination of respondent.

Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court of Winnebago County.

*Appellate court reversed;*
*circuit court affirmed.*