In re MARRIAGE OF KURT ANTHONY HILL, Petitioner-Appellee, and DIANE REVELS HILL, a/k/a DePland, Respondent-Appellant.

First District (4th Division)    No. 81-691

Opinion filed April 1, 1982.

Lapat and Sokolow, Ltd., of Chicago (Morris R. Saunders, of counsel), for appellant.

Kurt Anthony Hill, of Chicago, for appellee, *pro se*.

JUSTICE ROMITI delivered the opinion of the court:

Respondent Diane Elizabeth Revels Hill DePland (Diane) appeals from an order of the trial court denying her amended petition for modification of the custody provisions of a judgment for dissolution of marriage. Those provisions had been incorporated into the judgment from a prior separation agreement entered into by Diane and petitioner Kurt Anthony Hill (Kurt). On appeal Diane contends (1) the trial court utilized an improper standard of proof in the hearing on the petition; (2) the court's determination was contrary to the manifest weight of the evidence; and (3) the court erred in barring Diane from introducing evidence of acts occurring prior to the entry of the judgment of dissolution.

We affirm.

The parties were married in December 1971 and had one child, Kurt Anthony Hill Jr. (Kurt Jr.), who was five years of age at the time of the

dissolution order, July 25, 1978. The separation agreement incorporated into that order provided that Kurt was to have custody and control of Kurt Jr. for the school year period of September through June each year, and Diane was to have custody and control during the summer months. Each party was to have reasonable visitation periods with the child each weekend during the other party's custodial period.

In September 1980 Kurt apparently initiated certain proceedings (not included in the record on appeal) to enforce these custody provisions. Diane then filed a petition for modification of custody which was subsequently stricken by the court with leave to file an amended petition. On November 21, 1980, Diane filed an amended petition for modification alleging that since the entry of the judgment of dissolution she had become the custodial parent with Kurt's consent. On December 15, 1980, the court granted Kurt's motion to dismiss that amended petition. On December 19 Diane filed a motion seeking visitation with Kurt Jr. during his Christmas vacation and also seeking a "rehearing of the December 15 hearing." The court set a hearing for December 22, 1980, on "respondent's motion seeking visitation." On December 22 an agreed order, signed by Kurt and Diane, was entered. That order set out the terms of Diane's visitation with Kurt Jr. over Christmas. A paragraph of the order stating that Diane was withdrawing her motion for a rehearing was stricken. On January 5, 1981, Diane again filed a motion for a rehearing of the December 15, 1980, hearing. On January 12, 1981, the court entered an order granting Diane a hearing on her amended petition, but only on "the question of the existence or non-existence of 'consent' by the custodial father to any possible integration of the minor child into the family of the mother." Following that evidentiary hearing the court filed an order on March 4, 1981 (but entered it *nunc pro tunc* as of February 23, 1981), denying Diane's petition. Diane then filed her notice of appeal on March 19, 1981.

■■ In a motion for dismissal filed with this court and taken with the case Kurt contends that the agreed order of December 22, 1980, had the effect of denying Diane's December 19, 1980, motion for rehearing so that her second motion was improper and her notice of appeal of March 19, 1981, was not timely filed, depriving this court of jurisdiction. However we find that the agreed order, from which a waiver of the rehearing request was stricken, did not constitute a ruling on Diane's December 19, 1980, motion. Thus Diane's renewal of that motion on January 5, 1981, still within 30 days of the final order of December 14, 1980, was timely filed. The court granted that motion and following a hearing denied her any relief on March 4, 1981 (or February 23). In any event Diane then properly filed her notice of appeal within 30 days of that order, on March 19, 1981. Accordingly, we deny Kurt's motion for dismissal of the appeal.

At the evidentiary hearing the following pertinent testimony was adduced. Kurt, who was examined as a section 60 witness (Ill. Rev. Stat. 1979, ch. 110, par. 60), and who also testified in his own behalf, admitted that from July 25, 1978, until August 1980 his son did not reside with him for more than three days at a time. According to Kurt, in mid-August 1978 he told Diane that a new job would involve a lot of traveling, and he was considering enlisting the aid of his mother or Diane to care for Kurt Jr. at least for the first semester of his first-grade year. Diane asked if she could do this. Kurt told her she would care for Kurt Jr. three to five days of the week but the child would stay with him the rest of the time. He emphasized that he only wanted her to take care of Kurt Jr.; that when he became stabilized in the Detroit area by January 1979 she would have to send their son there for the rest of the school year. Diane assured him she was not trying to take his son.

That fall Kurt Jr. stayed an average of four days a week with Diane and three days a week with Kurt, who maintained a Chicago apartment with a separate bedroom for Kurt Jr. so he could be with his son. During this time Kurt also had a two-bedroom apartment in Rochester, Michigan. He made inquiries there about schools for Kurt Jr. and found two that he liked.

In mid-November 1978 Kurt telephoned Diane and asked her when school would be out so he could prepare for Kurt Jr.'s January enrollment at a Rochester school. Diane agreed to send this information but never did so. Subsequently Kurt agreed to let his son stay with Diane for Christmas. Diane told Kurt that Kurt Jr. would be excited about his January trip to Michigan. But on January 2, 1979, she called to say that Kurt Jr.'s teacher had advised her that the split school year could be traumatic for him. Kurt confirmed this opinion with Sister Frances Ryan, a child psychologist who had known Kurt Jr. from a prior school. He then agreed to allow the boy to remain with Diane for the balance of the school year. Diane told Kurt he could then have Kurt Jr. for the summer.

On May 11, 1979, Kurt visited Diane and she told him she and her new husband were moving to New Orleans. When Kurt reminded her that their son would be with him all summer and the next year, Diane told him not to worry, that nothing would change. The next day Diane asked if Kurt Jr. could accompany her and her husband on a visit to her mother in Louisiana. Kurt agreed to this.

By the end of June Kurt was again living in Chicago. In early August he phoned Diane and arranged to send money for Kurt Jr.'s travel back to Chicago. On August 22, 1979, he again phoned Diane to ask about travel arrangements and to tell her he would be living with Sonni (Hill) (whom he subsequently married December 1, 1979). Diane said she would not send the child to live with "any white bitch." He tried to calm her, telling

her Kurt Jr. would be going to the Latin School, which would be a great opportunity. Diane again refused to send their son, saying she did not want him living with "that Nazi whore." She then hung up the phone.

Three to seven days later Kurt called again but Diane persisted in her refusal. When Kurt called her on September 24, 1979, she informed him that she had enrolled Kurt Jr. in school in Louisiana and refused to return him because taking him out of school would harm him. Diane again refused a telephoned request to return Kurt Jr. on October 2, 1979. In mid-October Kurt called and his son answered. He first refused to talk but then said his mother had told him he could not speak to Kurt. Kurt then spoke to Diane, demanding the return of his son. Diane replied:

"Did you really think I would ever send him back to live with that whore you are with now, that dirty white bitch."

On November 14, 1979, Kurt sent Diane a letter formally asking her to reconsider her actions. Several days later he called her. She still refused to send Kurt Jr. back to Illinois, but finally agreed to allow Kurt to visit his son in Atlanta over Thanksgiving. However she threatened Kurt with kidnapping charges if he "tried anything." During that visit he again tried unsuccessfully by telephone to convince Diane to allow him to keep their son. Kurt testified that one reason he did not simply keep Kurt Jr. at that time was that he was black and Sonni was white and, apparently as a consequence of Diane's threats, he was afraid of being stopped by the Georgia State police.

Kurt Jr. was also allowed by Diane to spend that Christmas with Kurt in Chicago. Kurt called her and informed her he had decided to keep the child. Diane threatened him with kidnapping charges and jail. On January 2, 1980, Diane called to tell Kurt her sister had been shot and she needed the comfort of her son. Within several days Kurt telephoned her and agreed to this provided she terminated legal proceedings she had begun in Louisiana. Diane agreed. Kurt also made clear to her that he was to have Kurt Jr. for the summer and the next year.

During the period from January 1980 to May 1980 Kurt testified he telephoned his son twice a week and wrote to him every week. In mid-May he called Diane to make arrangements to get the child back. Diane claimed to have information pertaining to tax fraud by Kurt, threatened him with jail, and refused to return Kurt Jr. When Kurt said he would come to Louisiana Diane said:

"Come on, baby. My father and uncle are waiting for you and they will blow you away."

Kurt and his wife Sonni then decided to seek legal assistance.

Kurt was unable to reach Diane again until the end of June. She maintained her refusal to return the child. Kurt then could not reach her until mid-August. At that time he obtained the return of Kurt Jr. by falsely

telling Diane he might have to have his left leg amputated. Kurt denied ever intending to consent to the integration of Kurt Jr. into Diane's family.

Adolphus Lester Jr., testifying for Kurt, confirmed that in August 1978 Kurt and Diane agreed that Diane would have Kurt Jr. while Kurt was out of town and Kurt would have him when in town. Lester recalled that Kurt Jr. went to Kurt's home about every week that fall.

Sonni Hill testified that she met Kurt in September 1978 in Michigan and married him December 1, 1979. In September 1978 Kurt told her he had custody of Kurt Jr. and was looking for a school for the child, who would be coming soon. In November 1978 he showed her his son's room in his Michigan apartment and again told her the son would be there soon.

Diane testified to substantially the same facts concerning the periods of time Kurt Jr. stayed with her in the period in question. However she specifically denied all Kurt's statements concerning his many attempts to regain custody. She testified that between July 25, 1978, and August 1980 Kurt made no statements to her concerning the custody of their son. She admitted receiving his letter of November 14, 1979. That letter stated, *inter alia*, that she was not allowing Kurt his legal rights to his son, was precluding all communication between them, and it further asked her to reconsider her actions. Diane maintained that the letter referred merely to a dispute over her threat not to send her son for a Thanksgiving visit if Kurt did not send money for the trip. Diane specifically denied making any of the belligerent statements concerning custody attributed to her by Kurt in his testimony. She testified that she first told Kurt in February 1979 of her plan to move to New Orleans. She told Kurt she would let him know what school Kurt Jr. was in and would set up visitation arrangements for November and December of that year. According to Diane Kurt wished them luck and said he would be glad when Kurt Jr. could visit him in November and December. Diane also testified that her sister was shot on January 7, 1980, so she could not have used this as a reason for regaining custody of Kurt Jr., who was already with her on January 2 when Kurt claimed she telephoned him about the shooting.

Hugh DePland, testifying for Diane, stated that they were married September 22, 1978. To his knowledge, from May 1978 until August 1980 Kurt never asked for the return of his son. He too recalled that in February 1979 Kurt was told of their plans to move to New Orleans and at that time wished them luck.

I

■■ The sole issue before the trial court was whether, under the terms of section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 610(b)), Kurt Jr. had been integrated into the family of Diane with Kurt's consent. Section 610(b) provides:

"(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Commenting on this provision in its memorandum opinion the trial court stated:

"§610 reflects an underlying policy favoring the finality of child custody judgments and making their modification difficult. The statute has limited the previous broad discretion given the trial court in matters of child custody. [*Hoffmann v. Poston* (1979), 77 Ill. App. 3d 689, 396 N.E.2d 576; *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499.] Therefore, we emphasize that Respondent's burden of proof in this action is extremely high. * * *"

We find no merit to Diane's contention that this statement by the court indicated it was imposing an improperly high burden of proof on her. The court was merely indicating its awareness of the presumption in favor of the custodial parent created by this section. As was stated in *In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21, 396 N.E.2d 499, 502:

"We believe that section 610(b) * * * reflects an underlying policy favoring the finality of child-custody judgments, and making their modification more difficult. * * * By creating a presumption in favor of the present custodian, the legislature has sought to promote a stability and continuity in the child's custodial and environmental relationships which is not to be lightly overturned."

## II

Diane also contends that the decision of the trial court was contrary to the manifest weight of the evidence. The testimony we have summarized presented the court with two widely divergent versions of the circumstances under which Diane gained almost continuous physical custody of Kurt Jr. from July 1978 to August 1980. The testimony of Diane and her husband, if believed, tended to establish that Kurt consented to

this continuing custody and actually approved of it. But in its memorandum opinion the trial court clearly indicated that it believed the testimony of Kurt and his witnesses. That testimony established that over this period Kurt repeatedly attempted to regain custody of his son after arranging for temporary care by Diane while he relocated. Diane continued to have custody only because she persistently and adamantly refused Kurt's requests, employing threats and subterfuge where necessary. Diane points to the instances in which Kurt relinquished control over their son after vacation stays with him. But in his testimony, as we have summarized, Kurt explained the threats or pleas that preceded each of these relinquishments, and he clearly established that his actions were not intended to permanently alter the custodial agreement he and Diane had originally made.

■■ Thus this case differs from that of *In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, 394 N.E.2d 58, cited by Diane, in which it was found that the custodial parent had placed the child with the child's mother for two years and had willingly permitted the child to become integrated into the new family during this period, only seeking to regain custody after two years had elapsed. We find ample evidentiary support for the trial court's determination that custody should remain with Kurt because he never consented to a change in that custody.

### III

■■ Finally Diane contends that the trial court erred in barring her from testifying concerning who had actual custody of Kurt Jr. in the months immediately preceding the entry of the judgment of dissolution of marriage on July 28, 1978. In an offer of proof Diane indicated that she would have testified that from the latter part of April 1978 until the day of the judgment of dissolution Kurt Jr. resided with her during the week and stayed with Kurt on weekends. Without reaching the merits of whether the trial court should have permitted this testimony, we find that it could not have affected the court's determination of the issue of consent to a change in custody following the judgment of dissolution. Consequently we find that any error by the trial court in this regard was harmless and we find no basis for reversal on this ground. *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.

Accordingly, for the reasons set forth in this opinion, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and JIGANTI, J., concur.