*In re* MARRIAGE OF DAVID G. WECHSELBERGER, Petitioner-Appellant, and MARY J. WECHSELBERGER, a/k/a Mary J. Simon, Respondent-Appellee.

Second District   No. 82—721

Opinion filed June 24, 1983.

Donald J. Weaver, of Elgin, for appellant.

James M. Kiss and Associates, of Carpentersville, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The petitioner, David G. Wechselberger, who we will refer to as the "father," appeals from an order of the trial court which denied his custody-modification petition, in which he sought to transfer custody of the parties' two minor children from the respondent, Mary Wechselberger, who we will refer to as the "mother," to himself. On appeal, the father contends, in essence, that the trial court's order denying the change of custody was contrary to the manifest weight of the evidence.

In June 1978, the father filed a petition for dissolution of the parties' 1971 marriage. The trial court granted the petition and dissolved the marriage. The dissolution judgment incorporated a marriage settlement agreement which, among other things, awarded custody of the parties' two minor children, David (age 6) and Kathy (age 4), to the mother. The judgment also granted the father reasonable visitation rights. Subsequently, on January 10, 1980, the court entered an agreed order which, among other matters, set forth the times that the father would have a right to visit with the children: every other weekend, every other major holiday and birthday, and a two-week vacation period.

In July 1982, the father filed a petition for modification of custody in which he attempted to secure custody of the children. In his petition, he alleged that the following changes in circumstances warranted the modification: (1) that each of the parties had remarried; (2) that he now lived in a single-family home with sufficient space for the children; (3) that the children had been living with him continuously since June 18, 1981, at the request of the mother; (4) that the minor children had lived with him in October and November of 1979 and again from June to September 1980; (5) that the children had been integrated into his current family; (6) that he was better able financially to provide for the children; and (7) that his working hours and those of his current spouse were such that one of them would always be present in the home with the children. In addition, he alleged that the transfer or change of custody would serve the best interests of the children. The mother responded to the modification petition and, *inter alia*, requested that the court enter an order returning the children to her.

The hearing held in this matter established the following pertinent facts. After the mother became seriously ill in October 1979, she en-

trusted the children to the care of the father for approximately one month. Subsequently, the parties decided that the children would live with their father from June 7 to August 17, 1980. The extended summer visitation was longer than the visitation period the father was accorded under the dissolution judgment as amended. The mother gave physical custody of the children to the father during the summer of 1980 for financial reasons and in order to afford the children a greater opportunity to visit their father. She also granted the extended visitation, in part, so that she could live with or develop a relationship with a male friend.

The children also stayed with their father during the summer of 1981. The mother explained that she became unemployed in January 1981 and she, therefore, felt it was better for the children to stay with the father during that summer. Thereafter, on August 1, 1981, the parties entered into a written agreement whereby they agreed that the father should take care of the children from August 1981 to August 1982. Under that agreement, the mother was granted "visitation rights" with the children every weekend, and the children were to be returned to her upon request after August 1982. According to the mother, the agreement was not meant to be permanent. In explaining why she entered into the above agreement, she related that she began working for an insurance company on August 3, 1981, and that her employment necessitated that she arise at 5:30 a.m. and drive 22 miles to work. In order not to interrupt the children's schooling and rather than leaving them with a baby-sitter while she worked, she decided that it would be better if the children stayed with their father for a year until the insurance company completed construction of a new office building near her place of residence. At the time of the hearing held in this matter, she only had to drive seven miles to her new workplace.

The father remarried in June 1980, while the mother remarried in May 1982. The parties' two minor children lived with the father and his current wife (Marsha) from June 1981 to August 1982. The father and his new wife have a one-year-old daughter, Sarah; both young David (now age 10) and Kathy (now age 8) enjoy a good relationship with Sarah. Given the respective working hours of the father and Marsha, either one or the other of them is able to be at home with the children. His home contains four bedrooms and is situated on a lake where the children can swim. During the period the parties' children lived in the father's home, he incurred substantial dental bills as a result of treatment which the parties' two children required. In addition, he related that the children were fairly undisciplined when they

were entrusted to his care, but their behavior has improved in his home. He also stated that his ex-wife often used profanity within earshot of their children and felt that she had a problem managing her finances.

During the 15-month continuous period he had physical custody of the parties' children, the father actively participated in recreational and sporting events with them and took an interest in their progress in school. The children, who seemed happy living with the father and performed well in school, formed friendships with other children in the neighborhood while living with their father. In addition, the father's current wife is very fond of his children and enjoys doing things with them as a family. She has formed a good, loving relationship and wants to have custody of them. The father admitted, however, that the mother had visited with the children pursuant to the terms of the written agreement and had also attended parent-teacher conferences and other functions with the children during the period in question.

The mother and her current husband have engaged in many activities with the parties' two minor children during the 15-month period they were living with the father and his new family. The mother attended events with the children on additional occasions not provided for in the visitation clause of the agreement of August 1, 1981. The children seem to be content when they are with the mother and her husband, who loves David and Kathy as his own children. The children have maintained their friends in the apartment complex where they previously lived with the mother and, once returned to the mother's custody, would enroll in the same school they attended before living with their father. The mother has made arrangements to have a babysitter in the home from 3 to 4:30 p.m. on work days during the short period the children will be home from school before she or her husband returns from work. She and her husband also have arranged to rent a three-bedroom apartment in the same complex so that each child would have a separate bedroom.

Diane Vincent, who has known the parties since 1975, remarked that when the children are with their father, they are outgoing, but when they are with their mother, they are very quiet. From her observations, since their father has had care of the children, they are happy and well-behaved, whereas prior to that time they were quiet. In her opinion, the parties' children appeared more happy and more content living with their father.

Marilyn Cody, a child psychologist and counselor, testified that the parties' children had been very happy and contented during the period they were living with their father; and that the children's physical ap-

pearance had improved during that time; that Kathy was more open, relaxed and comfortable while living with the father and that he and his wife "had worked out a really good way of dealing with the children."

Reverend Fred Eisenhut stated that the children frequently attended church and Sunday school with the mother and her husband. He felt that they provided adequate care for the development and growth of the children.

After hearing the testimony, the trial court denied the father's petition to modify custody and ordered that the children be returned to the mother. The court below concluded that there was insufficient evidence of a change in circumstances to justify a transfer of custody.

The sole issue presented is whether the trial court's order denying the custody-modification petition was against the manifest weight of the evidence or an abuse of discretion under the provisions of section 610(b) of the Illinois Marriage and Dissolution of Marriage Act, as recently amended (Ill. Rev. Stat. 1981, ch. 40, par. 610(b), effective July 1, 1982).

The crux of the father's appellate contention is that the evidence sufficiently demonstrated that the "change of circumstances" and the "best interests" requirements for a change of custody under section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1981, ch. 40, par. 601(b)) were met in this case and, thus, that the trial court erred in not granting his custody-modification petition and in not transferring custody of the two minor children from the mother to himself. In support of his assertion that the requisite change in circumstances had occurred, he argues that the evidence adduced below established that the children had been integrated into his current family with the consent of the mother (see Ill. Rev. Stat. 1981, ch. 40, par. 610(b)(2), effective until July 1, 1982).

■ Because the present case involves a custody-modification petition which was filed after July 1, 1982, the trial court's authority to transfer custody is governed by the dictates of section 610(b) of the Marriage Act, as recently amended (Ill. Rev. Stat. 1981, ch. 40, par. 610(b), effective July 1, 1982). Under the provisions of the recently-enacted section, the trial court shall not modify a prior custody judgment, after the expiration of the two-year period following the original judgment, unless it determines "by clear and convincing evidence," based upon facts that arose after or were unknown at the time of the prior judgment, that a change has taken place in the circumstances of the child or the child's custodian and that the modification is needed to serve the best interests of the child.

Under the terms of the version of section 610(b) which was in effect until July 1, 1982, the trial court could not modify a prior custody judgment unless it found that a change in circumstances had occurred and that the modification was in the child's best interests. However, the court was precluded from modifying or transferring custody unless one of three conditions existed: (1) the custodian agreed to the modification; (2) the child had been integrated into the petitioner's family with the custodian's consent; or (3) the child's current environment endangered seriously his health and the advantages of changing custody outweighed the harm caused by a change of environment. (Ill. Rev. Stat. 1981, ch. 40, pars. 610(b)(1), (2), (3), effective until July 1, 1982; *In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 618-19.) By its terms, former section 610(b) requires the employment of a two-step approach to the modification of prior custody judgments. Initially, the court must determine whether one of the statutory prerequisites delineated in subsections (b)(1) through (b)(3) exists. Second, once the conditions set forth in one of the three subsections have been satisfied, then the court must determine whether the modification is necessary to serve the best interests of the child. *In re Estate of Brown* (1982), 103 Ill. App. 3d 470, 473; *In re Marriage of Strader* (1981), 101 Ill. App. 3d 779, 782; *In re Marriage of Friedman* (1981), 100 Ill. App. 3d 794, 803; *In re Marriage of Gebis* (1981), 100 Ill. App. 3d 710, 711-12 and cases cited therein.

A quick comparison of the two versions of section 610(b) reveals that the enactment which took effect after July 1, 1982, does not contain the three criteria found in subsections (b)(1) through (b)(3) of the earlier statute. (See *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 70.) Thus, under the new law the trial court is no longer restricted, in custody-modification matters, to reliance upon one of the three factors previously set forth expressly in the earlier enactment, although in our opinion these factors may give some guidance in determining whether a change in circumstances has occurred. In this sense, the recent amendment to section 610(b) broadened or liberalized the basis upon which the trial court could, in its discretion, order a modification of custody.

At the same time, however, the new version of section 610(b) requires the petitioner to establish by clear and convincing evidence that a change in circumstances has occurred and that the modification was in the best interests of the child. In this regard, the amended statute requires a more exacting level or burden of proof than did the prior enactment, under which the court, in determining whether one of the three criteria existed, employed the preponderance-

of-the-evidence test normally used in civil matters (see *In re Stephenson* (1977), 67 Ill. 2d 544, 553). The law is well settled that clear and convincing evidence requires a high level of certainty. (67 Ill. 2d 544, 556.) Clear and convincing evidence is considered to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54; *In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 13-14.

■ Section 610(b) reflects an underlying policy favoring the finality of child-custody judgments and making their modification more difficult. Its effect is to create a legislative presumption in favor of the present custodian, thereby promoting the stability and continuity of the child's custodial and environmental relationship which is not to be overturned lightly. (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21; *Kraft v. Kraft* (1982), 108 Ill. App. 3d 590, 596; *In re Marriage of Hill* (1982), 105 Ill. App. 3d 473, 479; *In re Marriage of Padiak* (1981), 101 Ill. App. 3d 306, 311-12; *In re Marriage of Gebis* (1981), 100 Ill. App. 3d 710, 712.) However, once the trial court has determined that the presumption has been overcome, the court of review will not disturb that determination on appeal unless the trial court's decision was contrary to the manifest weight of the evidence or amounted to an abuse of discretion. *In re Marriage of Friedman* (1981), 100 Ill. App. 3d 794, 803; *In re Custody of LaMarca* (1979), 78 Ill. App. 3d 26, 29.

In reaching its decision to deny the father's petition to modify custody, the trial court stated the father had argued before it that the children had become habituated to their new environment during the 15 months they were entrusted to his care; that they were happy and thriving in their new abode; and that, consequently, there was a sufficient change of circumstances to warrant the requested transfer of custody. The court also remarked that the father had presented evidence that the children were happier, more outgoing and better dressed since living with him. The trial court stressed, however, that the wife had performed several acts that demonstrated not only her intense love for the children but also her qualification to retain custody of the parties' children. In this regard, the court below emphasized the wife allowed the husband to have the children for two summers when she determined, for whatever reason, that they would be better off with him; that when she was unable to care for them adequately due to the requirements of her new job, she entrusted them to the father's care, rather than hire a baby-sitter; and that during the period the father had physical custody of the children, the mother and her new husband, in addition to exercising normal visitation at their residence, made a

great effort to attend functions in which the children were involved at school. After recognizing that both the mother and the father were good parents, that both parties were fit to have custody and that its decision in this custody-modification matter was excruciatingly difficult, the trial court concluded that insufficient evidence was presented to justify a change of custody. Accordingly, the court ordered (1) that since the father had failed to meet his burden, the mother should retain legal custody, and (2) that the children should be returned to her on August 27, 1982, a few days prior to the expiration of the one-year period stated in the written agreement, so that the physical transfer of the children could take place in time for them to change schools.

■■ ■ The gravamen of the father's contention on appeal is that, because the parties' children had resided with him during the summer of 1980 and again from June 1981 to August 1982, the evidence sufficiently established that the children had been integrated into his new family with the mother's consent. The trial court rejected that argument, and we concur with the result the trial court reached.

It is clear to us that the children had not been integrated into the father's family with the mother's consent during the summers of 1980 and 1981, periods during which the mother entrusted the children to the father's care, in part, because she wanted to afford them a greater opportunity to visit their father and because she was experiencing financial difficulties. This court has determined that integration occurs where the children have begun to develop a stable and permanent custodial and environmental relationship with the petitioner's family. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 619.) Under that standard and based on the evidence in this case, a permanent relationship had not developed during the summer months when the father temporarily had physical custody of the children. In addition, the consent requirement of section 610(b)(2) was intended to ensure that the custodial parent acquiesced not only to the transfer of physical custody of the children but also in their integration into the petitioner's family. (106 Ill. App. 3d 617, 619; *In re Custody of Stearns* (1980), 84 Ill. App. 3d 195, 198; *In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, 1000.) The law is well established that the mother's generosity in allowing the father to exercise greater visitation rights than mandated by the court order does not demonstrate that she consented to the integration of her children into the father's family. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 620; see *In re Custody of Stearns* (1980), 84 Ill. App. 3d 195, 196, 198.) Also, consent is not established in this case where the mother, in part, left the children with the father for the summers because of financial considerations. See *In re Custody of Sa-*

*loga* (1981), 96 Ill. App. 3d 661, 665.

◾ Even assuming *arguendo* that integration occurred during the period from June 1981 to August 1982, when the father continuously had physical custody of the children, there is no evidence in the record that the mother wilfully consented to the children's integration into the father's family. On the contrary, the mother testified, and the written one-year agreement into which the parties entered reflects, that the transfer of physical custody was temporary, not permanent. (See *In re Marriage of Hill* (1982), 105 Ill. App. 3d 473, 480; *People ex rel. Bukovic v. Smith* (1981), 98 Ill. App. 3d 144, 151-52; *In re Custody of Saloga* (1981), 96 Ill. App. 3d 661, 665-66.) Furthermore, the continued contact the mother maintained with the children during the extended 15-month period they were living with the father evidenced her lack of consent to integration and distinguishes the present case from *In re Custody of Burnett* (1979), 75 Ill. App. 3d 998, 1000-01, upon which the father relies. Also distinguishable from the case at bar are *In re Custody of Iverson* (1980), 83 Ill. App. 3d 493, 498, *In re Custody of Thompson* (1980), 83 Ill. App. 3d 97, 101, and *Holloway v. Holloway* (1973), 10 Ill. App. 3d 662.

Integration into the petitioner's family with consent as we have pointed out is no longer required to be proved, although it may be a factor the court may take into account in determining whether a change in circumstances has occurred.

We deem the question in this case is whether a change in circumstances has occurred and whether a modification is in the best interest of the children.

◾ In reviewing the evidence, we believe that while a change of circumstance may have been proved, it is implicit in the trial judge's decision that a modification was not necessary for the best interest of the children. That finding is not against the manifest weight of the evidence or an abuse of discretion. It is a sufficient ground to affirm the trial court.

For the reasons expressed above, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

REINHARD and VAN DEUSEN, JJ., concur.