*In re* MARRIAGE OF DARLENE VALLIERE, Petitioner-Appellee and Cross-Appellant, and A. JAMES VALLIERE, Respondent-Appellant and Cross-Appellee.

First District (5th Division) No. 1—94—3660

Opinion filed September 29, 1995.—Modified on denial of rehearing November 17, 1995.

1096

A. James Valliere, of Stuart, Florida, *pro se*, and Sarane C. Siewerth, of Schiller, Du Canto & Fleck, of Chicago, for appellant.

Corine A. Shuflit, of Shuflit & O'Hara, of Chicago, for appellee.

JUSTICE T. O'BRIEN delivered the opinion of the court:

In this appeal, we are asked to review the propriety of an order entered by the circuit court which modified a child custody provision contained in a judgment of divorce. For reasons which follow, we affirm in part, vacate in part, and remand the cause with instructions.

The parties, respondent, A. James Valliere, and petitioner, Darlene Valliere, were married on November 4, 1984, and divorced on October 24, 1988. The couple have one child, Jonathan, who was born on November 21, 1985.

According to the marital settlement agreed to by the parties and made a part of the judgment of divorce, James and Darlene both received joint legal custody of Jonathan. Darlene received physical custody of Jonathan while James enjoyed liberal visitation rights. Darlene and Jonathan resided in Palatine, Illinois. James lived in Stuart, Florida.

On July 22, 1992, James filed a "Petition for Permanent Custody and Other Relief" in the circuit court of Cook County. In the petition, James alleged that there had a been a change of circumstances concerning Jonathan's custody. Specifically, James charged Darlene with engaging in a course of conduct designed to interfere with and injure James' relationship with his son. Examples of this conduct include Darlene's lack of cooperation in establishing Jonathan's visitation schedule with James, Darlene's disruption of that visitation, and Darlene's constant attacks on James' character. James additionally alleged that Darlene's actions were not in Jonathan's best interest and had impaired his emotional growth and development.

After taking evidence in the case, the trial judge issued a 33-page written "Memorandum Opinion, Findings, Conclusions and Order Following Trial on Petition for Change of Custody." In the memorandum and order, the court found that a substantial change in circumstances had occurred since the original award of physical custody to Darlene in 1988. In particular, the court cited Darlene's post-decree

conduct and the "ongoing psychological damage to Jonathan." The court determined, that

> "a permanent change of physical possession to James might ultimately be unnecessary and could result in great trauma to Jonathan. It is found that a shift from sole to shared physical possession coupled with interim remedial sole physical possession in James can, with the right ancillary conditions, achieve the bulk of the benefits of such a permanent change without incurring the bulk of the detriments ***."

The court determined that the changed custodial provisions were in accordance with Jonathan's best interest.

To that end, the court ordered an "interim remedial period" in which James was to have sole physical custody of Jonathan in Florida and Darlene was to have visitation rights. This "interim remedial period" was to commence March 1, 1994, and was to continue until two weeks before the start of school in Palatine, Illinois, in the fall of 1995, "unless Jonathan's and Darlene's psychological problems have not been largely resolved, *** in which case the period will be extended as necessary to accomplish such resolution." The court later modified its order, stating that a hearing would be conducted on August 15, 1995,[1] as to whether "Darlene and Jonathan's psychological problems *** have been largely resolved." The circuit court further ruled "if Darlene establishes by a preponderance of the evidence that her and Jonathan's psychological problems have been largely resolved, then Jonathan shall move back to Illinois where Darlene shall have primary physical possession with James to have rights of physical possession as determined." Both parties appealed.

On appeal, James does not challenge the circuit court's findings, but rather, takes issue solely with the relief afforded by the court. James asserts that the order contravenes the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/100 et seq. (West 1992)). On the other hand, Darlene, in her cross-appeal, maintains, inter alia, the circuit court's findings as to the child custody issue are against the manifest weight of the evidence. Before addressing these arguments, we feel it necessary to comment on certain nonsubstantive issues.

■ Darlene initially insists James has failed to provide this court with a complete record. We disagree. James has filed with this court a record sufficient to support his claim of error, which involves a question of law. The absence of a transcript of proceedings does not

---

[1]This court has stayed the scheduled August 15, 1995, hearing pending the outcome of this appeal.

bar appellate review if the issue involves a question of law. *Department of Revenue v. Anderson* (1985), 131 Ill. App. 3d 486, 475 N.E.2d 1133.

■ Unlike James, Darlene, however, asks this court to review the factual findings of the circuit court and hold that they are contrary to the manifest weight of the evidence. As such, Darlene is required, as a cross-appellant, to provide a sufficient record to support her claim of error. In the absence of such a record, we must presume that the circuit court's order had an adequate factual basis. (See *Fischer v. Mann* (1987), 161 Ill. App. 3d 424, 425, 514 N.E.2d 566.)[2] Notwithstanding Darlene's affirmative duty as an appellant to supply this court with a record sufficient to support her claims of error, Supreme Court Rule 323(a) (134 Ill. 2d R. 323(a)) gives Darlene, as the appellee, the right to serve on the appellant a designation of additional portions of the proceedings that the appellee deems necessary for inclusion in the report of proceedings. Thus, Darlene had every opportunity to present the transcripts of the proceedings to this court, both as an appellant and as an appellee. Accordingly, we summarily affirm the factual findings regarding child custody made by the circuit court.

We now turn to James' contention that the circuit court violated section 610 of the Act.

■ Section 610 of the Act provides a statutory scheme in which a parent may petition the court to modify a child custody provision in a divorce decree. If, as in this case, the modification is sought more than two years after the entry of the custodial award, the statute requires the petitioner to prove by clear and convincing evidence that (i) a change has occurred in the circumstances of the child or either or both parties having custody and (ii) that the modification is necessary to serve the best interest of the child. (750 ILCS 5/610(b) (West 1992).) Only if that evidentiary burden is satisfied may the court modify the prior custody judgment. 750 ILCS 5/610(b) (West 1992).

James maintains that the circuit court erred by creating the "interim remedial period." He further asserts that the circuit court improperly ordered a second hearing in which the court shifted Darlene's burden of proof from clear and convincing to a preponderance of the evidence. We agree.

■ Our courts have noted that the legislature enacted section 610 in order to promote " 'stability and continuity of the child's custodial

---

[2]Darlene's argument is even less persuasive in light of an order entered by this court in which the parties were ordered to complete the record with the necessary bystander's reports and transcripts.

and environmental relationship.' " (*In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 499, 485 N.E.2d 367, quoting *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385; see also *In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 435 N.E.2d 1361.) Indeed, the strict evidentiary burden of proof contained in the statute serves as a testament to the legislative intention that such modifications be difficult to attain. *In re Marriage of Wechselberger*, 115 Ill. App. 3d at 786.

We are, of course, aware of the fact that the circuit court is vested with a significant amount of discretion in child custody matters, and a reviewing court is generally reluctant to interfere with the circuit court in the exercise of that discretion. (*In re Custody of Sussenbach*, 108 Ill. 2d at 498-99.) However, in post-decree proceedings for the modification of child custody provisions of the divorce decree, the circuit court's discretion is a judicial discretion limited to the pleadings and proof pertaining to a change in circumstances which affect, adversely, the best interest of the child, sufficient to warrant the modification of the decree. Every presumption is indulged in the validity of the decree and if its provisions are to be changed, the burden of proof is on the moving party to show why the change should be made. (*In re Custody of Sussenbach*, 108 Ill. 2d at 498-99.) In short, the court's discretion, although great, is limited by the requirements contained in section 610.

■ In the present case, modification of the original award of custody could only be obtained if James, as petitioner, proved by clear and convincing evidence that (i) a change in circumstances had occurred in the child or in one or both of the parents having custody and (ii) that modification served the best interest of the child. The circuit court made such findings, noting in its order that the change of custodial provisions was "in accordance with Jonathan's best interest." However, in rectifying the situation, the circuit court ordered the "interim remedial period" with a future hearing in which Jonathan's physical custody could be restored to Darlene. Although we commend the trial judge for his attempt to fashion a temporary custody order which would allow Darlene to regain physical custody should she "mend her ways," we believe that this portion of the circuit court's order contravened section 610.

To be sure, the court's order modified the original divorce decree to the extent that it changed physical custody of Jonathan from Darlene to James, albeit for 16 months. James argues that the order mocks the legislative purpose of section 610. These concerns are apt. James resides in Florida and Darlene in Illinois. Frequent changes in residence are difficult for all involved in a move, but most especially

for children in their formative years. Changing schools, establishing new friendships, assimilating into new neighborhoods, and the like can be traumatic even if the family unit is intact. In a divorce environment, such change becomes all the more challenging. However, under section 610, all post-judgment orders are "temporary" in the sense that they are subject to modification when the parent seeking modification has proved, by clear and convincing evidence, that the statutory requirements have been met.

In recognition of these concerns, this court has noted that

"[c]ustody cases require careful decision, and caution must be exercised in determining custody awards. The very nature of a divorce in a family is disrupting in the lives of the children involved. *The strictures of the legal system should not operate to cause more chaos.* The standard against which all actions must be measured in all custody cases, both by the trial court and the appellate court, should be the best interest of the child. [Citation.] However, in an effort to achieve a situation which is beneficial to the children, a trial court cannot avoid the possible consequences of an order by making all orders temporary 'experiments' to see which set of circumstances will result in the best living conditions for the children. [Citation.] As noted in *King v. Vancil* (1975), 34 Ill. App. 3d 831, 834-35, 341 N.E.2d 65, 68:

'[A child custody award] is probably one of the most difficult and important tasks a trial judge undertakes. However, the children and the parents are certainly entitled to a certain degree of finality and conclusiveness when an order of custody is entered. Custody of children is the most important aspect of divorce, and this matter should not be subject to frequent modifications where the order was not conditional with respect to such changes.' " (Emphasis added.) (*Carroll v. Carroll* (1978), 64 Ill. App. 3d 925, 929-30, 382 N.E.2d 7.)

Although we recognize *Carroll* and *King* predate the adoption of section 610, this court has utilized their reasoning in analyzing modifications made pursuant to section 610. (See *In re Marriage of Kondos* (1982), 109 Ill. App. 3d 615, 618, 440 N.E.2d 1046.) Nevertheless, we believe the concerns expressed in these opinions, *i.e.*, that custody should not be the subject of frequent modifications, have been codified by the legislature in the requirements set forth in section 610. The statute works to discourage the filing of frequent custody petitions by requiring that specific standards be proved by clear and convincing evidence before any modification may be made. Based upon this legislative intent, this court has held that "[a] trial judge must make a permanent decision based on the evidence presented and cannot continue temporary custody from time to time either to

avoid making a difficult decision or to avoid the requirements of section 610." *In re Marriage of Cesaretti* (1990), 203 Ill. App. 3d 347, 354, 561 N.E.2d 306, *appeal denied* (1991), 136 Ill. 2d 542, 567 N.E.2d 329.

During the oral argument held in this case, an analogy was made to cases involving the temporary inability, due to serious injury or illness, of a custodial parent to care for the child and the recourse available to the non-custodial parent in such situations. In *Naylor v. Kindred* (1993), 250 Ill. App. 3d 997, 620 N.E.2d 520, the appellate court was asked to review a modification made when the custodial parent, the mother, became incarcerated. As the custodial parent, the mother designated her own mother as the child's "temporary" custodian. The child's father sought modification, arguing that a change of circumstances had occurred in that the custodian was in prison and could no longer care for the child. The court recognized that the

> "incarcerated parent has the right to make emergency arrangements for the child's immediate care, [but] the incarcerated parent cannot dictate that the third party continue to act as temporary custodian for the child for the duration of his or her incarceration, defeating the noncustodial parent's rights to custody." (*Naylor*, 250 Ill. App. 3d at 1010.)

In resolving the issue, the court ultimately held that

> "[w]hen a parent to whom custody was originally awarded is incapable, due to his or her incarceration, of continuing physical custody of the child, and the child is being cared for by a third party, that is a significant change in circumstances and custody may be modified *** *if such modification is in the best interests of the child.*" (Emphasis in original.) (*Naylor*, 250 Ill. App. 3d at 1015-16.)

The court went on to state that an incarcerated parent will not necessarily lose custody of the child upon the petition of the noncustodial parent, noting that the proposed modification must still be in the best interest of the child. (*Naylor*, 250 Ill. App. 3d at 1016.) The court reasoned that in certain situations where the custodial parent has remarried and has made a good home for the child in which the child could appropriately live during the incarceration period, a trial court may conclude modification was not in the child's best interest.

We believe the analysis contained in *Naylor* is helpful in cases in which a court is asked to enter a temporary custody order in an emergency situation where the best interests of the child are at stake. However, we are not confronted with those facts in this case because an emergency situation was neither alleged in James' petition nor acknowledged in the circuit court's order. Indeed, the lengthy nature

of the evidentiary hearing in this case belies any emergency situation. Thus, concerns for emergency situations are not raised by the facts before this court. Moreover, Darlene's conduct, as described in the circuit court's order, is not readily remediable, unlike serving one's sentence or recovering from a broken limb. Rehabilitation, if it occurs, may not be permanent. To enter an interim order of custody under the circumstances of this case would frustrate the purpose of the statute which was enacted to reflect "an underlying policy favoring finality of child-custody judgments and making their modification more difficult." *In re Marriage of Wechselberger*, 115 Ill. App. 3d at 786.

As discerning as the circuit court's order was, it was a clear modification of the five-year-old divorce decree. The circuit court changed the physical custodian from Darlene to James. This change was a permanent one in that it would last until Darlene proved that her and Jonathan's emotional problems were resolved. However, the custody arrangement crafted by the circuit court leaves open the possibility of a further modification of this modification, *i.e.*, Jonathan's return to Darlene, without her having satisfied the prerequisites of section 610.

Under section 610, James as the petitioning parent bore the burden of proof; Darlene did not. James satisfied his burden of proof: The circuit court found that James had proved by clear and convincing evidence that a substantial change in circumstances had occurred within the meaning of section 610 and that a modification of the custodial provision of the divorce decree was "in the best interest of Jonathan." Despite these findings, the court provided Darlene with another proverbial "bite of the apple" by ordering a future hearing at which time she was to proceed with a lesser evidentiary burden than that contained in section 610. Put another way, the circuit court has modified the divorce decree in this case, but has set up an unauthorized procedure for any future modification of the modification. This new, judicially created procedure actually makes it easier for Darlene to modify the modification for two reasons. The future hearing does away with section 610's first requirement, that a substantial change of circumstances be proved. Moreover, the new hearing collapses section 610's second requirement, that modification serve the best interests of the child, into a vague inquiry into whether Darlene's and Jonathan's various "psychological problems" are resolved. Finally, the new hearing adopts the lesser preponderance of the evidence burden of proof. Thus, the new procedure violates the plain language of section 610 while undercutting the legislative intent that modification be difficult to achieve. If either James or

Darlene ultimately desires to modify any modification made to the custody provision of their 1988 divorce decree, he or she simply must utilize section 610 to do so.

Parenthetically, we note that section 610(a) prohibits a party from moving to modify a custody judgment within two years after the judgment's date. (750 ILCS 5/610(a) (West 1992).) In other words, section 610(a) creates a two-year "waiting period" before any modification to custody judgments can be sought. The statute allows for the excusal of this waiting period only upon either the stipulation of the parties or the submission of affidavits which indicate that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health. (750 ILCS 5/610(a) (West 1992).) In scheduling the August 15, 1995, hearing, the circuit court circumvented this statutory provision as Darlene would be excused from waiting the required two years without first establishing that Jonathan's environment endangered his health.

Accordingly, we vacate that portion of the circuit court's order which created the "interim remedial period" and which called for the August 15, 1995, hearing. We remand the cause to the circuit court to enter a revised order based upon the evidence already heard, designating which parent is entitled to permanent physical custody in accordance with the provisions of section 610 as construed herein. Physical custody of Jonathan will remain with James until the circuit court has entered the above order.

■ Due to our disposition of this issue, we must also vacate the circuit court's award of attorney fees and its modification of child support. Because the child custody issue has not been finally concluded, any disputes as to fees and child support are, necessarily, also unresolved. In so doing, we make no judgment as to the ultimate resolution of those disputes; we merely hold that the court's orders as to those issues are premature at this stage of the proceedings.

Affirmed in part; vacated in part and remanded with instructions.

COUSINS, P.J., and GORDON, J., concur.