GLADYS B. DOYLE, Plaintiff-Appellant, *v.* WILLIAM M. DOYLE, Defendant-Appellee.

Fourth District No. 14810

Opinion filed August 4, 1978.

Harold M. Jennings, of Markowitz, Lawrence, Jennings, Naylor & Mueller, of Bloomington, for appellant.

Alan I. Weintraub, of Thomson, Thomson, Zanoni, Flynn, Weintraub & McElvain, of Bloomington, for appellee.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case involves the interpretation of section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610) which governs the modification of custody judgments. Plaintiff Gladys Doyle appeals from an order of the circuit court of McLean County granting a petition to modify and awarding custody of the parties' two minor children to defendant William Doyle. On appeal, plaintiff contends (1) the court improperly applied the standards set forth in section 610, (2) the decision was contrary to the manifest weight of the evidence, and (3) the court failed to make the findings necessary to support its decision.

Plaintiff and defendant were married on August 3, 1963, in Pennsylvania and had two children: William born 2/21/69 and Megan born 2/9/73. On August 17, 1976, in the circuit court of McLean County, plaintiff was granted a divorce from defendant on the grounds of mental cruelty. The divorce decree granted custody of the children to plaintiff subject to defendant's right to reasonable visitation in accordance with the terms outlined in the property settlement approved by the court and incorporated into the decree.

On Sunday, December 5, 1976, while defendant had taken the children on an outing, plaintiff had a seizure or a blackout related to her heavy consumption of alcohol and was taken to Mennonite Hospital in Bloomington. Defendant arranged for a friend to take care of the children that night, and the following day he purchased a home and the children moved in with him. On December 9, 1976, defendant was awarded temporary custody of the children pursuant to a petition for adjudication of wardship filed by the McLean County State's Attorney in a juvenile proceeding. On January 12, 1977, he filed a petition to modify the divorce decree as to custody of the minors. The petition alleged a substantial change in circumstances since the entry of the divorce decree which affected the children's welfare and listed specific allegations of plaintiff's lack of fitness to have custody. The children continued to live with defendant from December 6, 1976, until the time of the hearing on the petition, November 3-4, 1977.

The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 101—802) became effective October 1, 1977. Defendant's petition was pending at that time and thus was governed by the provisions of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 801). Section 610 of the Act provides in part:

"Modification.) (a) No motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason

to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.

(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." Ill. Rev. Stat. 1977, ch. 40, par. 610.

In compliance with section 610(a) of the Act, defendant filed an affidavit stating that there was reason to believe that the children's environment with plaintiff would endanger their physical, mental, moral, and emotional health, and in support thereof referred to his earlier petition to modify. An identical affidavit signed by Benjamin Moore, a child clinical psychologist who had examined the parties' minor children, was filed November 3, 1977, the date of the hearing.

■■ Plaintiff argues that the terms "custody judgment" and "prior custody judgment" as stated in the statute refer to final rather than temporary orders of custody. The supreme court of Montana interpreting their similarly worded statute so held in *Groves v. Groves* (1977), ____ Mont. ____, 567 P.2d 459. We agree. The effective use of temporary custody orders would be greatly reduced if they could only be vacated or modified in conformity with the stringent requirements of section 610. Here the "prior custody judgment" was the original divorce decree.

Plaintiff also contends that the phrase "the child's present environment" as used in subsection (b)(3) refers to the environment which she as the custodian under the "prior custody judgment" would be able to furnish the child at the time of the hearing on the petition for modification. The statute is not clear as to how this phrase is to be interpreted, particularly in cases where, as here, the child has been in the temporary custody of the other parent for a substantial period of time prior to the hearing.

A possible interpretation is that the phrase refers to the situation at the time of the filing of the motion to modify. Under somewhat similar circumstances in *Groves* where the child had been in the temporary

custody of the noncustodial parent for 1½ years before a hearing was held on the petition to modify, the Montana court stated:

> "In the unique context of this case, in which the noncustodial parent was awarded temporary custody, 'present environment' must be taken to mean the environment of the child while with the parent who held the child under the prior decree and before custody was temporarily taken from him." (567 P. 2d 459, 463.)

An argument in support of holding the situation at the time of the filing of the motion to control arises from the use of this phrase in both subsections (a) and (b)(3). In subsection (a), the reference is clearly to the time of filing the motion. A similar time reference would likely have been intended when the same phrase later appears in subsection (b)(3).

If "the child's present environment," as the phrase is used in subsection (b)(3), means the child's environment at the time of the hearing on the motion and the subsection is given literal meaning, then in situations of this nature, the environment described is that of the child with the noncustodial parent who has temporary custody and is seeking permanent custody. Subsection (b) provides that "the court shall retain the custodian appointed pursuant to the prior judgment unless" one of the conditions in (b)(1) to (3) are met. Given our interpretation that the "prior custody judgment" here is the award of custody in the divorce decree, if subsection (b)(3) is given its literal meaning, then the court would be directed to retain the custodian under the prior judgment unless the environment provided by the temporary custodian is harmful. Such a construction is totally illogical.

On the other hand, if "the child's present environment" refers to the environment which the custodian under the prior judgment could provide if the children were in her care, then the trial court must engage in an extremely speculative determination.

■■ The record does not show with certainty what interpretation the trial judge placed on the phrase. We need not determine what the correct interpretation is because even under plaintiff's theory that the phrase refers to the hypothetical situation that would exist if she had custody at the time of hearing, the trial judge's ruling was not contrary to the manifest weight of the evidence.

Dr. Benjamin Moore, a child clinical psychologist, testified that he interviewed and tested defendant and the two children in January and February 1977 and again in September and October of that year. At the first meeting, he spoke to all three together but after that defendant was not present when he interviewed the children. Following the January and February interviews, shortly after the children began to live with defendant, Dr. Moore concluded that the childen regarded the father figure as more supportive and found the mother figure to be inconsistent,

unduly punitive, lacking in warmth and difficult to relate to. When the children were retested in September and October, after defendant had remarried, their feelings toward the father figure were approximately the same and their feelings toward the mother figure were more positive, but Dr. Moore could not say whether the mothering figure represented their natural mother or their stepmother. They did feel more positive toward their natural mother than they had earlier, but both demonstrated a clear preference for their stepmother.

Upon her release from the hospital on December 10, 1976, plaintiff voluntarily entered the residential facility of Project Lighthouse, the McLean County Alcohol and Drug Assistance Unit. Following her discharge from the unit on February 9, 1977, she participated in an "after-care plan" and maintained formal and informal contact with the unit and Alcoholics Anonymous. The evidence presented at trial showed that plaintiff had made very good progress in eliminating her abuse of alcohol and that her ability to function and cope with stress had greatly improved. However, when the children were taken from her earlier she had often been intoxicated and unable to care for the children and unable to properly relate to them. There was no assurance that plaintiff's abuse of alcohol would not recur nor that her inability to relate to the children would not continue. The court could conclude that to allow the children to live with their mother would severely endanger their physical and emotional health.

Subsection (b)(3) requires the trial court to weigh the "harm likely to be caused by a change of environment" by removing the children from the permanent custodian against its advantages to them. Here, the children had been away from the permanent custodian for a substantial period of time and in the temporary custody of the parent seeking permanent custody. No evidence was presented which indicated that ending the plaintiff's permanent custody would harm the children in any way. The trial court's order actually provided for them to continue in their environment. Section 610 evidences a clear intent to stabilize custodial arrangements. Because of the length of time the children had been in the temporary custody of their father, the trial court's order had a stabilizing effect.

■■ Finally, plaintiff argues that the findings made by the court below were insufficient under section 610 to support a decision to modify custody. The court's order entered November 29, 1977, stated:

> "1. The facts have arisen since the entry of the Decree of Divorce in this cause showing that substantial changes have occurred in the circumstances of the children and their custodian and that modification is necessary to serve the best interests of the children.
> 2. That the Petition should be granted."

Plaintiff contends that a finding of "best interests" is insufficient and the court must specifically find that one of the conditions listed in subsection (b)(1) to (3) exists.

Plaintiff relies on another Montana case, *In re Custody of Dallenger* (1977), ___ Mont. ___, 568 P. 2d 169. The Montana Supreme Court there ruled that the conditions under which custody may be modified (identical to those found in section 610(b)(1) to (3) of the Illinois Act) were "jurisdictional prerequisites" to modification and that the court must make a specific finding of the existence of at least one of those conditions in order to support a decision to modify. The court reasoned that to permit modification based on a finding which refers solely to "best interests" would seriously weaken the policy of the statute.

We do not agree that a specific finding with respect to subsection (b)(1) to (3) is required. Subsection (b) expressly requires that a finding should be made that a change in circumstances of the child or custodian has occurred and that a modification is necessary for the child's best interests. The express requirement for these findings indicates that no requirement was intended for more detailed findings on points (1), (2) or (3) although such findings would be of aid to a court of review.

For the reasons stated, we affirm.

Affirmed.

TRAPP and WEBBER, JJ., concur.