*In re* CUSTODY OF LEAH ALYENE BOYER.—(DEBRA K. BOYER, Plaintiff and Respondent-Appellee, *v.* TIMOTHY D. BOYER, Defendant and Petitioner-Appellant.)

Third District   No. 79-775

Opinion filed March 14, 1980.—Modified on denial of rehearing May 5, 1980.

Stanley L. Tucker, of Hartzell, Glidden, Tucker & Neff, of Carthage, for appellant.

William C. Davis, Jr., of Lewistown, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The petitioner, Timothy Boyer, appeals from a judgment of the Circuit Court of Fulton County denying his petition for the modification of a child custody decree. Timothy and the respondent, Debra Boyer, were divorced on April 5, 1976. Custody of the couple's infant daughter, Leah, then aged 15 months, was awarded to Mrs. Boyer. On February 14, 1979, Mr. Boyer petitioned the court to change Leah's custody from that of Mrs. Boyer to himself. A hearing was held and on June 13, 1979, the petition for change of custody was denied. Although the parties were divorced under Illinois' prior Divorce Act, the modification of custody petition is governed by Illinois' new Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, par. 801(c).) Petitioner's contention is that the mental, emotional, and moral health of the child is endangered because the custodial mother, Mrs. Boyer, was, at the time the petition was filed, residing with a man to whom she was not married. The petitioner further contends that this man has physically abused the child. The evidence on this latter point is in dispute, and we shall defer to the judgment of the trial court that the child's physical health is not endangered by residence in the mother's home.

It is undisputed that the respondent was, at the time of the filing of the petition, residing with one Chuck Bowman, a man to whom she was not married. They were living together as husband and wife in a rented three-bedroom house. The child, Leah, resided with them. In addition, Mr. Boyer attempts to show that Mrs. Boyer, prior to her cohabitation with Bowman, engaged in a sexually promiscuous course of conduct. The evidence is clearly to the contrary. Her prior liaisons were few and brief, apparently because she refused to engage in a romantic relationship with any man who was not interested in assuming the role of husband to her and father to her daughter.

Debra Boyer met Chuck Bowman, a divorced man, in January of 1977, while she was serving as a waitress for several American Legion fish fries that Mr. Bowman attended. They started to "date" in May of 1977. In October of 1977, Mr. Bowman proposed marriage to Mrs. Boyer. They set a tentative marriage date for January or February of 1978. However, Mrs. Boyer became fearful of marriage, due to her unsuccessful marriage to Timothy Boyer, and no ceremony was held. In December of 1977, Mr.

Bowman and Mrs. Boyer began to engage in sexual intercourse. By January of 1978, Mr. Bowman was spending several nights a week at Mrs. Boyer's home. At that time, Mrs. Boyer lived in a small rental house. It had only one room, divided by a three- to four-foot-high partition. The child, Leah, slept on one side of the partition. Mr. Bowman and Mrs. Boyer slept on the other side. In July of 1978, Mr. Bowman and Mrs. Boyer moved into a three-bedroom house together. Leah then had her own room. The third bedroom was sometimes occupied by Mr. Bowman's 4-year-old son, when Mr. Bowman was exercising his rights of visitation with the boy.

Ample evidence was introduced to show that Chuck Bowman and Debra Boyer centered their life together around Leah. They never left Leah with a babysitter at night, but always took her with them when they went out. Even before Chuck and Debra began to live together, their "dates" consisted of staying home and playing with Leah until the child's bedtime. Chuck, Debra, and Leah, often accompanied by Chuck's own son, regularly attended Sunday gatherings at the home of Debra's parents. There was considerable evidence that Leah was very fond of Chuck and that Chuck was fond of Leah. Both Debra and Chuck work during the day. Leah was cared for by a babysitter while Debra worked, and she now attends a preschool. Evidence was introduced that Mrs. Boyer is an immaculate housekeeper and that Leah has been well fed, well-clothed, happy, and well-adjusted. In February of 1979, shortly after the filing of the instant petition, Mr. Bowman removed himself from the house he had shared with Mrs. Boyer.

When Debra and Timothy were divorced, the court found them both to be fit parents. Timothy has since remarried. His present wife is very fond of Leah. She is also a good housekeeper. Mr. Boyer has presented the court with a plan for Leah's care, should he be awarded custody. Mr. Boyer is a trainer of race horses. If awarded custody of Leah, he would bring Leah to his place of employment, where his employer's wife would look after both Leah and her own daughter, who is the same age as Leah. Mr. Boyer would be able to have lunch with his daughter and to bring her home with him after work. At the appropriate ages, the two little girls would attend preschool and school together.

Evidence was presented indicating that Mr. Boyer may have been overindulgent toward Leah during his visitation time. The child would display undisciplined behavior for a day or two after her return from visitation, claiming her father never made her perform various tasks required of her by her mother and babysitter. More seriously, the evidence indicates that Mr. Boyer, because of his job training race horses, spends a good deal of time on the road. Mrs. Boyer testified that once, after an absence of two months, the child failed to recognize her father upon his return for visitation. Mr. Boyer has exercised his visitation rights

sporadically and has frequently been delinquent in his child-support payments.

The Boyers were divorced when Leah was 15 months old. She was only 12 months old when the couple separated prior to the divorce. Except for visitation periods and a brief seizure of the child by her father, during which time the instant petition was filed, Leah has been in the sole care of her mother. Because of her very tender age at the time of her parents' separation, the only continuing, stable parental care the child has known has been that of her mother. Although the father may be a competent parent, he has failed to show how removing the child from the continuing care of her mother and vesting custody in one who may seem to the child to be a relative stranger would benefit the child's emotional health.

■■ Section 610 of the Illinois Marriage and Dissolution of Marriage Act states:

> "(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:
>
> * * *
>
> (3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(3).)

The changed environment which Mr. Boyer alleges seriously endangers the physical, emotional, mental, and moral health of his child is the presence in the custodial home of a man to whom Mrs. Boyer is not married. Our supreme court, in a divided opinion, recently held that, while a custodial parent's fornicatious cohabitation is not presumptive of unfitness, such cohabitation is indicative of a possibly dangerous emotional and moral climate in which to raise children. Therefore, if all other factors are equal, the cohabitation could tip the balance in favor of the petitioning parent. *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421.

■■ However, as we have already noted, all other things are not equal here. The petitioner has not shown that the harm likely to be caused by a change of environment is outweighed by its advantages to the child. Moreover,

> "[T]he courts of this State appraise the moral example currently provided and the example which may be expected by the parent in

the future. [As was] held in *Nye v. Nye* (1952), 411 Ill. 408, 415, * * * past moral indiscretions of a parent are not sufficient grounds for denying custody if the parent's present conduct establishes the improbability of such lapses in the future. This rule focuses the trial court's attention on the moral values which the parent is actually demonstrating to the children.

Since the decision in *Nye*, the appellate courts of this State have repeatedly emphasized this principle, particularly when children were unaware of their parent's moral indiscretion. [Citations.]" (*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 347, 400 N.E.2d 421.) In contrast, Mrs. Jarrett "[a]t the time of [her] hearing, * * * and even when [the] case was argued orally to [the supreme court], * * * continued to cohabit with [her paramour] and had done nothing to indicate that [that] relationship would not continue in the future." *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 347, 400 N.E.2d 421.

As we have noted, immediately after the filing of the instant petition, Mr. Bowman removed himself from the home which he shared with Mrs. Boyer. At the time the petition for modification was filed, Leah Boyer was four years old. There being no evidence to the contrary, we must conclude that, at her tender age, she was "unaware of [her mother's] moral indiscretion." Mrs. Boyer consulted her attorney before commencing full-time residence with Mr. Bowman. Her behavior has consistently indicated that she would do nothing to endanger her child's welfare or to endanger her rights to the custody of her child. The mother's "present conduct establishes the improbability of such lapses in the future." The record indicates that the trial court, in determining the best interest of the child, felt that custody should remain in the mother. Implicit in this conclusion is also a determination that the best interest of the child should not be sacrificed by "punishing" the mother for her past indiscretions.

For the reasons stated, we determine that the trial court acted within its sound discretion in denying Timothy Boyer's petition for a modification of custody. The judgment of the Circuit Court of Fulton County is, therefore, affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.