SIDNEY R. SMART, Petitioner-Appellant, *v.* CATHLEEN A. SMART, Respondent-Appellee.

Third District   No. 80-304

Opinion filed April 8, 1981.

Robert J. Lenz, of Bloomington, for appellant.

Roland N. Litterst, of Covey & Litterst, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Petitioner Sidney R. Smart filed a petition to modify decree of divorce seeking custody of his minor child, Rebecca. After a hearing on the merits, the circuit court of Peoria County denied the petition and retained respondent Cathleen A. Smart (Miller) as custodian. On appeal, petitioner contends the trial court erred in (1) admitting evidence of

respondent's proposed new environment; (2) applying the standards of section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610); and (3) reaching a decision contrary to the manifest weight of the evidence.

The rather complex chronology which provides the background of this litigation began in June 1967 when the parties were married in Lincoln, Nebraska. During their marriage, they became involved in the Ecumenical Institute and the Institute of Cultural Affairs (hereinafter the Institute), religious organizations formed by the World Council of Churches to provide ministry in poverty-stricken areas and to revitalize those neighborhoods into livable communities. In April 1972, the parties moved into an Institute religious house in Peoria where they resided for 17 months. The Smarts lived in a partial communal setting, with 6 to 12 other persons, turning over their earnings to the Institute in return for housing and a subsistence level stipend. While living in Peoria, the parties visited Institute facilities in Chicago on several occasions.

In September 1973, the Smarts separated and petitioner moved to Bloomington. Respondent, then pregnant with Rebecca, moved to an Institute religious house on Sheridan Road in Chicago, where Rebecca was born in December 1973. In January 1974, the litigants attempted a reconciliation in Bloomington, which ended in April of that year. A divorce followed in August, when respondent rejoined the Institute. During the ensuing five years, respondent and Rebecca made frequent changes of residence and lived in six States. In June 1978, petitioner filed his first petition to modify the custodial provisions. The Smarts entered into a stipulation whereby respondent retained custody of the minor and petitioner was granted liberal visitation privileges. In July of that year, petitioner remarried and in June 1979, respondent married Edwin Miller, an Episcopal priest assigned by his diocese to the Institute.

Several weeks after respondent's marriage, petitioner delivered a letter objecting to Rebecca living in the area of the Institute's Trumbull Street facility in Chicago and to the school she was to attend. At this time, petitioner photographed the environs of the facility and school. In mid-October, respondent and Father Miller received confirmation of their new assignment in Indiahoma, Oklahoma, and advised petitioner in a letter advancing residency and visitation proposals. Respondent agreed to a two-week visitation while the move would be effected in November. On November 9, 1979, petitioner filed the instant petition and requested and later received an *ex parte* order of temporary custody, alleging, *inter alia*, the hazards of the Chicago slum environment. Petitioner acknowledged at the subsequent hearing that he knew respondent was leaving Chicago permanently.

Extensive evidence was introduced at the hearing on the petition and

will be summarized in conjunction with our discussion of petitioner's three contentions on appeal.

Petitioner first contends that the trial court erred in admitting evidence of respondent's proposed new environment as it was not the environment that existed at the time the petition to modify was filed. The court admitted the evidence as relevant to its modification determination pursuant to section 610(b)(3) of the Illinois Marriage and Dissolution of Marriage Act (hereinafter the Act), which provides:

> "(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:
>
> ❋ ❋ ❋
>
> (3) The child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(3).

Petitioner argues that the minor's present environment was the Institute's Trumbull Street facility rather than Indiahoma, Oklahoma, and directs our attention to *Doyle v. Doyle* (1978), 62 Ill. App. 3d 786, 379 N.E.2d 387. *Doyle* addressed the meaning of "the child's present environment" in a factual setting where the minor was living with the noncustodial parent pursuant to a temporary order and offered three possible interpretations of the phrase. Citing *Groves v. Groves* (1977), 173 Mont. 291, 567 P.2d 459, and noting that the use of the phrase in section 610(a) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(a)) seemingly refers to the time of filing, it mentioned that time as its first interpretation. After dismissing the temporary noncustodial environment as illogical, it added the environment the custodian could provide if the minor were in her care as a third interpretation. The court then concluded that it need not determine the correct interpretation. Petitioner also cites *De Franco v. De Franco* (1979), 67 Ill. App. 3d 760, 384 N.E.2d 997, *appeal denied* (1979), 75 Ill. 2d 589, where the petitioner alleged remorse over her adulterous cohabitation which had since ceased. The court concurred with the position taken in *Hahn v. Hahn* (1966), 69 Ill. App. 2d 302, 216 N.E.2d 229, where the court modified custody as the record was void of evidence lending assurance of the custodian abandoning her ways.

Respondent refers us to *In re Custody of Boyer* (1980), 83 Ill. App. 3d 52, 403 N.E.2d 796, *appeal denied* (1980), 81 Ill. 2d 589, where the

respondent's fornicatory cohabitation had ceased immediately after the petition therein was filed. The court noted her present conduct established the improbability of such lapses in the future and that the child's best interests should not be sacrificed by punishing the mother for past indiscretions. Respondent also cites *In re Custody of Ehr* (1979), 77 Ill. App. 3d 540, 396 N.E.2d 87, where a custody modification was reversed with the court noting the respondent's promiscuity and use of marijuana took place between one and two years before the hearing, and that, at the time of the hearing, she was no longer living in crowded quarters. Again there was no indication of the likelihood of future misconduct.

■■ While the above cases are factually dissimilar to the case at bar, they do serve to illustrate a certain judicial flexibility in defining a minor's present environment and a concern over the continuation of past deleterious situations. At the time of the filing of the instant petition, respondent had already formulated concrete plans to move to Indiahoma. Father Miller had left for the new home before the petition was filed, and respondent followed within a week of the filing. Petitioner had been aware of the pending relocation since October 1979 and enjoyed an extra two-week visitation with his daughter immediately prior to and in consequence of the planned move. If he had not obtained the temporary restraining order of November 14, 1979, Rebecca would have been integrated into her new family home well before the multiple hearings on the petition in January and February, 1980. Under these specific circumstances and noting the flexibility with which the courts have determined present environment, we find no error in the trial court's consideration of the Indiahoma environment. Whether this new environment will continue the past deleterious factors present in the Trumbull Street environment will be considered in our discussion of petitioner's third assignment of error.

Petitioner next contends that the trial court erred in applying the standards of section 610 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 610) rather than considering the evidence *de novo* and applying the standards of section 602 (Ill. Rev. Stat. 1977, ch. 40, par. 602). Petitioner premises his contention on the fact that the prior custody judgment herein was based on a stipulation of the parties.

■■ While there is authority for the proposition that when an original custody provision resulted from an agreement of the parties and the trial court had not heard evidence as to the child's best interests, it should be allowed to hear all of the evidence *de novo* when one party subsequently petitions for modification (*De Franco v. De Franco* (1979), 67 Ill. App. 3d 760, 384 N.E.2d 997, *appeal denied* (1979), 75 Ill. 2d 589; *Boggs v. Boggs* (1978), 65 Ill. App. 3d 965, 383 N.E.2d 9; *Schultz v. Schultz* (1976), 38 Ill.

App. 3d 678, 347 N.E.2d 749; *Randolph v. Dean* (1975), 27 Ill. App. 3d 913, 327 N.E.2d 473; *McDonald v. McDonald* (1973), 13 Ill. App. 3d 87, 299 N.E.2d 787, *appeal denied* (1973), 54 Ill. 2d 597), this does not remove the necessity of a section 610 finding. Citing the commissioner's note to section 409 of the Uniform Marriage and Divorce Act (9A Uniform Laws Annotated §409, Commissioner's Note (1973)), the supreme court has mandated specific findings under section 610(b) before a custody order can be modified. (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499.) Requiring such specific findings does not, however, imply that a trial court is barred from a *de novo* consideration of evidence. Section 610(b) specifically provides that the court may consider facts "that were unknown to the court at the time of entry of the prior judgment * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).) Accordingly, a *de novo* hearing may well be appropriate where the parties have previously agreed *inter se* to a custody provision. The standard to be applied in such situations remains that of section 610, with consideration of the child's best interests under section 602(a) only after the former showing. (*In re Marriage of Batchelor* (1980), 89 Ill. App. 3d 781, 412 N.E.2d 49; *In re Custody of LaMarca* (1979), 78 Ill. App. 3d 26, 397 N.E.2d 31. But *cf. In re Custody of Mayes* (1980), 86 Ill. App. 3d 644, 409 N.E.2d 12 (original provision obtained through fraud).) In the case at bar, the trial court indicated its willingness to consider facts which were unknown at the time of entry of the previous custody order in making its determination under section 610. We find no error in this procedure.

■■ Petitioner last contends that the trial court's decision is against the manifest weight of the evidence. From the extensive evidence presented in this cause, the court found, in its order of June 2, 1980, that the Trumbull Street environment seriously endangered the minor's physical, mental, and emotional health. As the child is no longer in this environment, we shall not recite the evidence leading to this conclusion; however, our review of the record does not indicate a lack of evidentiary support. The court further found the Indiahoma environment did not support such a finding and we shall briefly summarize the evidence leading to that conclusion.

Indiahoma is a community of Anglo-Saxon and native Americans with a population of approximately 1,200 people. Respondent and her family live in a five-room, three-bedroom home which includes an Institute office, and the regional director of the Institute indicated they would remain there for a minimum of three years. Respondent testified that the family would not return to the Trumbull Street facility as the buildings there located are being razed and she and Father Miller are now involved in rural community development work. As the majority of the

deleterious factors found by the court stemmed from the socioeconomic and urban characteristics of Trumbull Street, they have been eliminated by the change in locale. Not wholly eliminated by the relocation are additional environmental factors concomitant with the lifestyle of respondent's family unit. Partly due to her involvement in the Institute, respondent has relocated 12 times since the divorce, has frequently lived in communal settings, and has been limited in time spent and contact with her daughter due to her Institute responsibilities.

As indicated earlier, there is a judicial concern over the continuation of past deleterious situations. Those environmental factors which stemmed directly from the location of the Trumbull Street facility have been eliminated, and respondent's rural development work indicates the unlikelihood of return to such an area. Similarly, the three-year assignment and single-family home eliminate the transitory and communal aspects of respondent's situation to which petitioner has objected. Likely to continue are respondent's Institute responsibilities. The trial court, in considering these factors, did not approve of the respondent's lifestyle, but such circumstances failed to "meet the serious endangered test of the statute."

Considering the foregoing facts as shown by the evidence, along with "[t]he aversion to custody changes" and the legislative desire "to promote a stability and continuity in the child's custodial and environmental relationships" (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 421, 396 N.E.2d 499, 502), we do not find the trial court's order to be against the manifest weight of the evidence or an abuse of discretion.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.