In *re* MARRIAGE OF DONALD K. ELDERT, Petitioner-Appellee, and SANDRA ELDERT, Respondent-Appellant.

Third District   No. 3—86—0486

Opinion filed July 30, 1987.

800

Sarane C. Siewerth, of Schiler, Du Canto & Fleck, Ltd., of Chicago, for appellant.

Lyle B. Haskin and Anna B. Harkins, both of Lyle B. Haskin & Associates, and Edwin T. Simpson, both of Wheaton, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Sandra Eldert appeals from an order of the circuit court of Will County, Illinois, which modified a judgment of dissolution of marriage by changing custody of Jason Eldert from the mother, Sandra, to the father, Donald K. Eldert. In 1981 the mother and father obtained a dissolution of their three-year marriage and, by agreement of the parties, custody of their then two-year-old son was awarded to the mother, with the father to have visitation for one full week each month. By mutual agreement the father usually had Jason with him for two weeks each month until August of 1984.

In August of 1984 the mother notified the father that he could no longer have Jason for an entire week at a time because Jason would soon be starting kindergarten. A short time later, on August 13, 1984, the father obtained temporary custody of Jason by means of two *ex parte* orders of protection which he obtained against the mother and her boyfriend, Raymond White. In the father's petition for the orders of protection, he alleged that Raymond White hit or struck Jason on more than one occasion and that the mother allowed him to do so. On August 23, after a hearing, the orders of protection were terminated for lack of proof, custody was returned to the mother, and the previous visitation was reinstated.

Next, the father filed an amended petition for change of custody in which he alleged that the mother did not provide a desirable home or proper care for Jason. The father specifically asserted that the mother allowed "male friends of hers to hit and batter" Jason, that she used improper discipline by putting pepper oil on Jason's tongue, that she "discussed physical aggression against Donald K. Eldert with the minor child," and that she exposed Jason "to acts of a sexual nature." In October the father obtained an order for the parties to submit to a psychiatric exam at the Isaac Ray Center in Chicago in connection with his petition for change of custody.

The hearing on the amended petition began on June 10, 1985, and, in addition to the parties, witnesses included experts on behalf of

both the mother and the father, the father's present wife, his mother, and a babysitter. According to the testimony, Jason is a very active child who has behavior problems in school and who has required considerable discipline at home. The mother has a high school education and works full time as an assistant to an opthamologist. The maternal grandmother cares for Jason when the mother is at work. The mother stated that she disciplines Jason by spanking him with her hand and by depriving him of privileges. She admitted that her boyfriend had also spanked Jason with his hand two or three times and that on two occasions she put tabasco sauce on Jason's tongue when he persisted in using bad language. When the mother was notified by Jason's kindergarten teacher that his school behavior was disruptive, she at first did nothing, thinking that this was typical behavior for his age, but after additional contacts from the teacher, she worked with the teacher in an effort to improve his school behavior. According to the mother, after Jason was returned to her following the protective order, he was afraid to sleep alone. Since that time she has allowed him to sleep with her.

The father testified that Jason responds well to his approach to discipline, which includes verbal corrections and discussion about unacceptable behavior. The father is a college graduate and a certified public accountant who has remarried. He stated that if he is awarded custody, his present wife will quit her job and stay home to be a full-time parent to Jason.

The evaluation by the Isaac Ray Center included interviews by a psychiatric social worker and a child psychiatrist and testing by a clinical psychologist. The team concluded that Jason is an emotionally disturbed child with an unusually high level of anxiety and an attention deficit disorder. Jason's behavior was observed to be better with his father than with his mother. The team recommended that the father be given custody of Jason for a one-year trial period, and it based that recommendation on the fact that the father can provide a more structured day-to-day routine and more consistent discipline. The mother was seen as emotionally stretched as a result of defending the custody action, the stress of her work, and the demands of being a single parent. The team witnesses also stated that some of Jason's anxiety was likely due to the on-going custody dispute.

The mother's expert, Dr. Ner Littner, a psychiatrist with a specialty in child psychiatry, testified that in his opinion, Jason was suffering from a neurotic emotional disturbance of an internalized nature, that he is suffering from a severe case of separation trauma (where he fears separation from his mother), and that he needs imme-

diate psychotherapy. It was the opinion of Dr. Littner that Jason should remain in the sole custody of his mother. Dr. Littner based that opinion on the fact that the mother is the "psychological mother" as a result of the bonding that occurred during the first year of Jason's life and on the expectation that separation of Jason from his mother would deepen his fear of losing her and make any attempt at treatment much more difficult. Dr. Littner found no deficiencies in the mother's ability to deal with Jason's problems.

The trial court announced its decision in open court on July 24, 1985. The court found that the evidence was clear and convincing that Jason has experienced a change of circumstances since the prior custody order in that he now has problems with school behavior, has an emotional disturbance, has discipline problems, and is in need of immediate psychological therapy. The court also found that the change of circumstances warranted consideration of whether a modification of custody would be in the best interest of the child. The court found that, as to the disputed testimony, the father was more credible than the mother and the father's expert witnesses more objective and more persuasive than the mother's expert. The court also found that Jason's present environment was not meeting his needs and that, at the present time, the mother is not capable of meeting those needs. The court concluded that it is in the best interest of the child that custody be transferred permanently to the father.

● 1, 2 Before discussing the merits of this appeal, we first must consider the father's motion to dismiss the appeal on the ground that the report of proceedings has not been certified as correct by the trial judge. Supreme Court Rule 323 (107 Ill. 2d R. 323) provides for the trial judge to certify to the correctness of the report of proceedings or, in the alternative, for the parties to stipulate to the filing of the report of proceedings without certification. If no verbatim transcript is obtainable, the rule authorizes the appellant to "prepare a proposed report of proceedings from the best available sources, including recollection." Such a report also may either be stipulated to or certified. Another option permitted by Rule 323 is for the parties by written stipulation to agree upon a statement of facts which may be filed in lieu of the report of proceedings.

Here a verbatim transcript was prepared by the several court reporters who attended the various days of the custody hearing. The transcript prepared by one of the reporters contained numerous errors—some of which changed the meaning of what had been said and other errors which rendered nonsensical statements by witnesses, counsel, and the judge. On February 18, 1986, the parties appeared

before the trial judge with an 11-page list of corrections which the parties had agreed should be made in the transcript. The parties indicated that the only thing they could not agree to were five lines of the judge's oral decision. The court noted that there are material errors in the transcript that change the meaning of what was said or, in some cases, that are incomprehensible. Counsel for both parties indicated that they had made what they think are all of the material changes that needed to be made, but the court said, "I don't feel that I can certify a record based on material versus immaterial."

On March 6, 1986, the parties filed a stipulation wherein they stipulated to the filing of the report of proceedings with a list of material corrections which was attached as "Exhibit A" and incorporated into the report. The stipulation expressly stated that the parties did *not* stipulate "that the Errata Sheet which is attached as Exhibit A, (1) contains all material corrections to the Report of Proceedings or (2) that the Report of Proceedings is otherwise true and accurate."

The father argues that the mother has failed to meet her burden of providing an accurate record on appeal from which the reviewing court can determine whether the evidence supports the decision of the trial court. The mother responds that the father's stipulation to the filing of the report of proceedings with corrections, along with his counsel's representations to the trial court at the February 18 hearing, indicate that the record as corrected is sufficient. We emphasize, the only part of the record which could not be corrected by agreement did not involve any evidence but rather involved one statement made by the trial court in announcing its decision.

Supreme Court Rule 329 provides that material omissions or inaccuracies may be corrected by stipulation of the parties. That is obviously what was done here. The Illinois Supreme Court has held that Rule 329 was intended to provide a liberalized procedure for disputing the accuracy of the trial record and that certification is not a jurisdictional requirement. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.) Although the record here is not a totally accurate representation of every word that was said by the witnesses or by the trial judge in announcing his decision, we conclude that the appellant-mother has substantially complied with the requirements of Rules 323 and 329 and that the record is adequate for consideration of the issues presented by this appeal. The father's motion to dismiss the appeal is, therefore, denied.

The mother contends that trial court decision to transfer custody to the father was an abuse of discretion in that the requirements of section 610(b) of the Illinois Marriage and Dissolution of

Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(b) were not satisfied. At the time of the petition, hearing, and order, section 610(b) provided as follows:

> "After the expiration of the 2 year period following a custody judgment specified in subsection (a) of this Section, the court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, *** and that the modification is necessary to serve the best interest of the child." Ill. Rev. Stat. 1983, ch. 40, par. 610(b).

This statute reflects a legislative presumption in favor of the custodial parent in order to promote stability and continuity in the child's environment. (*In re Custody of Dykhuis* (1985), 131 Ill. App. 3d 371, 475 N.E.2d 1107.) Custody cannot be modified unless there is a material change in the circumstances of the child related to the child's best interests and unless the evidence establishes either that the parent to whom custody was originally awarded is unfit or that the change in conditions is directly related to the child's needs. (*In re Marriage of Lichtenstein* (1986), 139 Ill. App. 3d 881, 487 N.E.2d 1293.) However, once the trial court has determined that the presumption has been overcome, a court of review will not disturb that determination unless the trial court's decision was an abuse of discretion or contrary to the manifest weight of the evidence. *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 450 N.E.2d 1385.

Here the trial court did not find the mother to be unfit. Rather the court found that there had been a change in the circumstances of the child since the original custody decree. Those changes included problem behavior in school, disciplinary problems at home, and hyperactivity and other emotional problems requiring professional treatment.

■ The mother argues that these findings of changed circumstances all relate to things which happened after Jason started school and after the petition to modify custody was filed and that the trial court was primarily concerned with Jason's future behavior, not past events as required by statute. She insists that the trial court should only consider changes occurring before the petition was filed. In *Smart v. Smart* (1981), 94 Ill. App. 3d 791, 419 N.E.2d 695, this court held that it was not error for the trial court to consider events occurring after the petition was filed, particularly where there is judicial concern over the continuation of past deleterious conditions. Al-

though the circumstances of the instant case differ from those considered in *Smart v. Smart*, the judicial concern for the present and future needs of the child are the same. The trial court did not err in considering evidence concerning manifestations of Jason's emotional problems occurring after the petition was filed but before the hearing.

■ The mother also argues the evidence indicates that the cause of Jason's problems originated with the custody dispute. This is another version of the previous contention. No doubt the custody dispute contributed to Jason's anxiety and other problems, but those problems were nonetheless matters affecting his welfare and thus were properly considered by the trial court regardless of their origin.

■ The mother insists that the specific allegations of the father's amended petition were never proved and, therefore, that his petition should be denied. Even though every allegation was not proved, it was sufficient that several material changes in Jason's circumstances were established by the evidence, as indicated previously, and that those changes related to the care Jason needed. Some of his needs and problems could not be accurately described until Jason and his parents were interviewed by experts. We would be doing violence to the concept of the best interest of the child if we were to construe strictly the rules of pleading and proof in this situation. We find the proof sufficient to sustain the court's findings, and the court's findings were within the assertions of the petition.

Although the mother argues to the contrary, we are persuaded that the trial court did not err in finding, on the basis of facts arising since the prior judgment, that the father had established by clear and convincing evidence that a change has occurred in Jason's circumstances.

■ The mother next contends that the evidence did not establish that a change of custody was in the best interest of the child. The experts from the Isaac Ray Center recommended a one-year trial period of custody with the father. The mother points out that such a recommendation is contrary to the underlying policy of the law favoring finality and stability in child custody matters, and she challenges the credibility of those experts. The trial court rejected the one-year recommendation and ordered a permanent transfer of custody to the father. Although the trial court found the father's experts more credible and objective than the mother's, it would be wrong to assume that the trial court based its decision solely upon the testimony of the Isaac Ray witnesses. As the court's statement of decision indicates, the court weighed all of the evidence in reaching its decision. The fact that the court described this as "a very close decision" and mentioned

"disputed facts" does not mean that the court could not also find the evidence clear and convincing. The court had the difficult task of deciding whom to believe in some instances and of weighing a great amount of expert testimony. As the court noted, this was not as simple a case as those involving child abuse. For that reason, the careful analysis of the evidence set forth in the court's decision was most appropriate to the resolution of the parents' conflicting claims to the child.

■■ The mother also argues that the court wrongly compared the merits of the home of the father with that of the mother in determining that custody should be changed. This argument has no support in the record. The trial court expressly stated that it did not base its decision on the father's "present living conditions, employment, remarriage, or anything as to his present status." True, some of the expert witnesses discussed the parenting abilities of both parents, but the trial court cannot be faulted for concluding—after a consideration of all the evidence—that the mother was stretched to the limit and cannot do more to meet Jason's needs than she has been doing. We find that the court did not base its decision on "an obvious balancing process," as the mother claims, but rather determined the best interest of the child on the basis of all the relevant factors set out in section 602 of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1983, ch. 40, par. 602.

■■ Additionally, the mother contends that the decision of the trial court to transfer custody was contrary to the manifest weight of the evidence. She discusses the court's findings of fact and argues that the court erred in its determination of credibility, that it failed to note that the custody battle itself might be draining her emotional energies, and that the court failed to give sufficient weight to Dr. Littner's testimony. These are all matters going to the weight of the evidence, not to its sufficiency, and were properly determined by the trier of fact.

■■ The mother also claims that the court ignored the testimony of Dr. Littner that a change of environment would harm the child and also failed to consider the statements of all the experts that Jason's problems would continue regardless of who had custody. Again the mother distorts the decision of the trial court. The court recognized that Jason needed professional treatment to solve his problems and determined that the father was better able to provide the structure and help needed for treatment to succeed. Although we might well have reached a different result had we been the trier of fact in this case, we cannot say that the decision of the trial court was against

the manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court of Will County.

Affirmed.

WOMBACHER, J., concurs.

JUSTICE STOUDER, dissenting:
Initially, I agree with the court's denial of Donald Eldert's motion to dismiss this appeal. The court was correct in holding the record adequate for consideration of the issues presented.

With regard to the custody issue, I disagree with the result set forth in the majority opinion. At the time of the petition, hearing and order, the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)) provided as follows:

> "After the expiration of the 2 year period following a custody judgment specified in subsection (A) of this Section, the court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian *** and that the modification is necessary to serve the best interest of the child."

In the instant case, the trial court found, and the majority agrees, that there have been changes in the child's behavior since the original custody decree. The changes include behavior problems in school and at home. In addition, the record indicates that the child seems to be hyperactive. The court erred in analyzing the evidence presented as if this were an original custody determination, and not a modification proceeding.

On or about September 7, 1984, Donald Eldert, Jason's father, filed an amended petition for change of custody. The petition alleged that: (1) a change of custody would be in Jason's best interests, (2) he could provide a better home and living conditions than Sandra, Jason's mother, (3) he intended to remarry and could, thereafter, provide a more stable home for Jason, and (4) the home environment Sandra provided was undesirable in that (A) she has allowed male friends to hit and batter Jason, (B) has disciplined Jason by putting pepper oil on his tongue, and (C) has exposed Jason to acts of a sexual nature which are injurious to his health. The first three allegations of Donald's petition fail to set forth any reasons required by the stat-

ute for changing custody. These three contentions are the type of arguments that are appropriate in an original custody determination and do not address the requirements of the modification statute. The fourth allegation does not appear to have been proved. Neither the trial court nor the majority suggest that this allegation forms any basis for their decisions.

At trial, the petitioner's principal evidence consisted of a team of professionals from the Isaac Ray Center. The professionals included a psychiatric social worker, a child psychiatrist, and a clinical psychiatrist. The team's evaluation report was based upon visits to the homes of Donald and Sandra, interviews with the parties involved and psychological treating of Jason. The team of professionals concluded that Jason is an emotionally disturbed child with a high anxiety level and an attention deficit disorder. The team identified the possible sources of Jason's problems as being internal, biological or environmental. Although the team stated that the present legal dispute may be a major cause of the difficulties, an exact area could not be identified as the source of Jason's problems. The team felt that custody should be changed. However, they were not certain that such a change would be beneficial to Jason. Thus, the team recommended that custody be given to Donald for a one-year period. In light of the statute's requirements I do not find the professionals' testimony to be helpful. The professionals' findings do not address the custody problems now or those problems which may arise at a later date. The experts only offer opinions as to the possible causes of the child's problems. The experts do not affirmatively state that Donald's having custody would change Jason's behavior. Further, the experts do not suggest that the present custody situation bears any causal relation to Jason's problems. In addition, Sandra's expert, Dr. Littner, testified that Jason should remain in the sole custody of his mother. Dr. Littner concluded that separating Jason from his mother would result in further anxiety and behavioral problems. Dr. Littner feels that both parties have adequate ability to care for Jason. The trial court rejected both the Isaac Ray professionals' one-year trial period suggestion and Dr. Littner's recommendations. The court awarded Donald full custody. The court did not find Sandra to be an unfit mother. The trial court stated that it was their opinion that Jason's behavioral problems would continue no matter where he was placed. The trial court found that there was no evidence on whether Jason's behavioral problems did or did not exist at the time of the original judgment, but assumed that because they were not mentioned that they did not exist. Such an assumption is legally and factually erroneous, and in effect illuminates the neces-

sity of proving a change of circumstances. The trial judge's decision, as set forth in his final pronouncement, does not address the elements of Donald's petition. The judge's conclusion is based upon assumed behavioral problems which are not included in the petition. Further, the trial court erred by stating that a change of custody is determined by what is in the child's best interest. This is not the correct standard to be applied. According to the statute, the question to be decided is not whether Donald could provide a better home. The issue is whether changes have occurred in Jason or in Sandra which have adversely affected the custodial arrangement and which deem it necessary to change custody to serve Jason's best interests. Ill. Rev. Stat. 1983, ch. 40, par. 610(b).

The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)) reflects a legislative presumption in favor of the custodial parent in order to promote stability and continuity in the environment. (*In re Custody of Dykhuis* (1985), 131 Ill. App. 3d 371, 475 N.E.2d 1107.) Further, custody cannot be modified unless there is a material change in the circumstances of the child related to the child's best interest and unless the evidence establishes either that the parent to whom custody was originally awarded is unfit or that the change in conditions is directly related to the child's needs. (*In re Marriage of Lichtenstein* (1986), 139 Ill. App. 3d 881, 487 N.E.2d 1293) The record does not contain any substantive evidence indicating that Jason's situation has changed as a result of living with his mother. In addition, the evidence presented does not overcome the legislative presumption in favor of the custodial parent that is reflected in the statute. The speculative nature of the evidence is not helpful in a modification proceeding. The record does not indicate that a causal relationship exists between Jason's behavior and the present custody situation. I have been unable to locate any authority which would permit a change of custody where a causal connection does not exist between a child's problems and his custodian. Thus, because the evidence presented is insufficient in this type of proceeding, Donald has failed to prove that Jason's circumstances have changed in such a manner as to award him custody. Consequently, I would reverse the lower court's holding, and allow Jason to remain with his mother.