*In re* MARRIAGE OF GARY G. KLEIBOEKER, Petitioner-Appellant, v. TERESA D. KLEIBOEKER, n/k/a Teresa D. Heath, Respondent-Appellee.

Fifth District    No. 5—93—0389

Opinion filed June 10, 1994.

Scott Wilzbach, of Salem, for appellant.

Mark W. Stedelin, of Branson, Jones & Stedelin, of Centralia, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Gary and Teresa Kleiboeker were married January 3, 1981. A judgment of dissolution pursuant to a stipulation between the parties was entered on July 9, 1987, in which Gary was awarded custody of the two minor children of the parties, Nicholas, born June 6, 1983, and Jessica, born March 19, 1985. On July 28, 1992, Teresa filed a petition to modify custody, alleging:

"a. Petitioner [Gary] has resorted to the use of violence to punish

the children and has on repeated occasions inflicted bruises upon the children.

b. Nicholas, the older child, has developed certain behavior problems in structured situations wherein he resorts to violence.

c. The children has [*sic*] expressed desires to reside with the Respondent [Teresa]."

Following a hearing, Teresa was awarded custody of the children. Gary appeals the decision of the trial court, and we affirm.

Teresa Kleiboeker testified that she remarried in 1989 and has a good marriage. Following her divorce from Gary, Teresa attended nursing school and will soon be a licensed registered nurse. She currently works four days a week as a licensed practical nurse (LPN), but she testified that if awarded custody she will work only two days per week.

Teresa testified that prior to her separation from Gary in October 1986, he had beaten her by striking her with his hands in the presence of the children. She recalled one instance when he became angry at J.R., his son from a prior marriage, and hit him with a belt. When Teresa attempted to stop Gary from hitting the boy, Gary hit her and threw her against a wall. Nicholas witnessed this episode. Teresa testified that Gary had exhibited similar acts of violence during the marriage, and she feared him.

Teresa testified that following the divorce Gary permitted her to visit the children only at his residence. This intimidated her because Gary often pawed at her, tried to touch her, and wanted her to engage in sex with him. Gary exhibited this conduct in front of the children. Teresa further stated that three weeks following the divorce Gary became angered when Teresa cut Jessica's bangs. Gary and Teresa were outside when he hit her arms, shoved her in the chest, and knocked her to the ground. Teresa testified that Gary was on top of her, and when he ran into the house, she grabbed a baseball bat and chased him, breaking a window of his home. As a result of that incident, Gary obtained a restraining order against Teresa. She testified that since that time there have been no further acts of violence against her.

Prior to the divorce Gary disciplined the parties' children by slapping them on their hands. He also beat his older son with a belt. Teresa testified that since the divorce she has observed bruises on both children: on Nicholas on five occasions and on Jessica on three occasions. Teresa testified that she disciplines the children by spanking them with her hand or by prohibiting her son from playing video games. She testified that Nicholas has behavioral problems and fights over anything. Jessica vents her anger by hitting Teresa's four-year-old child.

Teresa testified that Gary will not listen to her or speak with her regarding problems with the children. She once suggested that they obtain counseling for Nicholas because he is depressed and angry, but Gary responded that psychiatry is for crazy people and that Nicholas is not crazy. In September of 1991, Nicholas' behavior was out of control; he would bang his head on the wall if he was upset. Gary advised Teresa to handle the situation as he does, by hitting Nicholas. Teresa also testified that Nicholas often hits Jessica and has threatened to kill her. Teresa believes that intervention is necessary to help her children become productive adults, and that she is more capable than Gary of providing the proper guidance that the children require.

At the hearing on modification of custody the court conducted an *in camera* examination of Nicholas. Nine-year-old Nicholas testified that when he gets in trouble at home his father sometimes talks with him or whips him. Nicholas testified that at various times his father has whipped him with his hand, a belt, a board, and a whiffle ball bat, and some of the whippings caused bruises. Nicholas testified that sometimes his father forces him and his sister to kneel on split wood for approximately 15 minutes. He further testified that sometimes his father makes him tickle his father's feet because his father says it makes him fall asleep faster. Nicholas testified that his mother never spanks him but will usually make him sit on the couch if he needs to be punished.

Nathan Heath, Teresa's husband, testified that he has been employed as a correctional officer for 10 years. He has been married to Teresa for two years. He testified that his step-daughter from a previous marriage lives with them, and that his 10-year-old son from a prior marriage visits regularly. Teresa's children and his children have their problems but for the most part they get along just fine. He testified that if awarded custody he and Teresa will not experience any marital problems because of it and are financially capable of raising the children.

Teresa's sister, Brenda Hester, testified that in 1987 she and her son stayed with Teresa and Gary for approximately two months. During her stay Brenda observed Gary discipline the children by hitting them with an object. At times Gary would punish the children by making them stand in a corner for hours. Brenda testified that she also observed that nearly every day Gary would force the children to tickle his feet while he lay on the couch watching television. This activity went on for hours at times. Brenda also observed Gary force his son to eat out of dirty soapy dishes when his son forgot to put away the dinner dishes.

Gary Kleiboeker testified that he often has the children tickle his feet for 10 or 15 minutes at a time. He testified that this helps to relieve stress on his feet. "I have bad knees and sometimes I stand on my feet all night at work. I compensate with the way I stand, to relieve the pain on my knees, and it puts more stress on my feet, and it helps relieve the stress on my feet. It just relaxes me." Gary testified that he punishes the children by spanking them with his hand or with a belt or a piece of paneling trim. He also admitted to punishing his children on a few occasions by requiring them to kneel on firewood for 10 to 15 minutes. Gary further testified that on one occasion he hit Nicholas hard enough to bruise him.

Gary also testified that he and Cheryl, Teresa's sister, have been married for five years. There are a total of five children living in his household: his son from a prior marriage, Nicholas, Jessica, and Cheryl's two children. He testified that he has a good marriage and that the children get along fine, like brothers and sisters. Regarding the incident which resulted in his obtaining a restraining order against Teresa, Gary testified that Teresa attempted to take the children from his home when it was not her visitation period. When he attempted to stop her, Teresa struck him. Gary pushed her to the ground and told the children to go inside the house. He then went into the house and attempted to telephone the police. Teresa took a baseball bat and broke two small windows in his house, so Gary grabbed the bat and shoved her onto the ground in an attempt to stop her from breaking more windows. Gary testified that the children did not witness any of the episode.

Gary also testified that since their divorce he and Teresa are not on the best of speaking terms. Whenever she has a problem to discuss, she speaks with Gary's wife. And if Teresa telephones and Gary answers, Teresa will ask to speak with Cheryl.

David Cottone testified that he and his wife met Gary and Cheryl at church and have known the couple for five years. David testified that his family visits the Kleiboeker home approximately two or three times per week. The two families vacation together and participate in family activities together such as cookouts or playing board games. David testified that in the five years he has known Gary he has seen Gary punish Nicholas by making him sit on the couch. David has observed Gary whip Nicholas with his hand on two occasions. David also testified that for two years he and Gary have been the leaders for the boys club at their church and have taken the boys, including Gary's sons, on camp outs.

Cheryl Kleiboeker testified that she and Gary punish the children by spanking them with a paddle. They also swat them with a

flyswatter, make them stand in a corner, or ground them from playing with certain toys for a few hours. She testified that Gary has used a board to spank Jessica and Nicholas at times but has never left any bruising. Cheryl testified that she has witnessed Gary forcing the children to kneel on firewood as punishment. Gary also makes the children tickle his feet, which averages about 30 minutes a week per child. Cheryl testified, however, that the children love their father and are happy living in their home.

Nicholas' fourth-grade teacher, Jacqulin Rightnowar, testified that she has spoken with Teresa regarding the boy's behavior on three occasions. She testified that the problems were not severe but were things his mother should be aware of, such as Nicholas working at a much slower pace than he was capable of. However, she testified that she did not believe Nicholas was distracted from his school work any more than any of the other students. She has never observed Nicholas exhibit any violent behavior.

In rendering its decision modifying custody, the trial court reasoned that but for a consideration of the circumstances as they existed prior to the parties' divorce, Teresa could not have met her burden of proving a substantial change in circumstances sufficient to warrant a change in custody. The court continued that, considering these factors, however, Teresa met her burden of proof, and it is in the best interest of the children that they reside with her. Gary Kleiboeker argues that the court erred in considering those events which occurred prior to the parties' divorce in determining that there had been a change in circumstances.

The parties resolved the issue of custody at the time of their dissolution of marriage by settlement agreement. At that time neither party had counsel, and the settlement agreement gave custody of the parties' children to Gary, with rights of visitation to Teresa. The record is silent as to what evidence, if any, the trial court heard at the time judgment was entered.

Section 610 of the Illinois Marriage and Dissolution of Marriage Act provides:

> "(b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian ***." (750 ILCS 5/610 (West 1992).)

Section 610 allows the court to rely on facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of its prior judgment. (*In re Marriage of Gibbons* (1987), 158 Ill.

App. 3d 998, 1002, 512 N.E.2d 52, 54; see also *Valencia v. Valencia* (1978), 71 Ill. 2d 220, 375 N.E.2d 98; *Smart v. Smart* (1981), 94 Ill. App. 3d 791, 419 N.E.2d 695.)

"Obviously, the reference to facts which were unknown at prior [*sic*] hearing includes a reference to such facts which were then in existence. *** [T]he wording of [section] 610(b) is constructed in such a way as to indicate that evidence of both newly arisen facts and those previously unknown to the court can be considered not only on the question of the child's best interests but also on the change of circumstances requirement." *Boggs v. Boggs* (1978), 65 Ill. App. 3d 965, 967, 383 N.E.2d 9, 11.

●1 The court originally based the custody award to the father on the stipulation of the parties, without taking evidence as to the circumstances of the parents or their ability to take care of the children. Given these circumstances, section 610 allows the court to consider facts existing at the time of the earlier decree but not then known to the court. (*Cf. Valencia v. Valencia* (1978), 71 Ill. 2d 220, 375 N.E.2d 98; see also *Smart v. Smart* (1981), 94 Ill. App. 3d 791, 419 N.E.2d 695.) We find no error in the trial court's consideration of facts which were unknown to the court at the time of entry of the previous custody order in making its determination under section 610.

Appellant next argues that the trial court's decision is against the manifest weight of the evidence. In reviewing child custody modification proceedings, the trial court's determination will be upheld unless the trial court's determination is against the manifest weight of the evidence or a clear abuse of discretion. (*In re Marriage of Kramer* (1991), 211 Ill. App. 3d 401, 409, 570 N.E.2d 422, 428.) In reviewing the trial court's determination, deference must be given to the opportunity of the trial court to observe the demeanor of the witnesses and assess their credibility. *In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 499, 485 N.E.2d 367, 371.

█ From the evidence presented, the trial court found some of the testimony troubling and had difficulty trying to assess certain witnesses' potential bias, given the "unusual family relationship between the parties" in that Gary Kleiboeker divorced Teresa and married her sister. The court determined that Gary keeps a tight rein on his family, kept a tight rein on Teresa when he was married to her, and at times feels it necessary to use physical punishment to control his family. It is apparent from the trial court's decision that the husband's matter-of-fact attitude in using corporal punishment played significantly in that decision. Other factors included the children's desires and the residential circumstances of Teresa. We have

reviewed the record, and considering the evidence, we do not find the trial court's order to be against the manifest weight of the evidence or an abuse of discretion.

Accordingly, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

GOLDENHERSH and MAAG, JJ., concur.