*In re* B.D. *et al.,* Minors (The People of the State of Illinois, Petitioner-Appellee, v. J.T., Respondent-Appellant).

First District (6th Division)    No. 1—00—0084

Opinion filed March 23, 2001.

Rita A. Fry, Public Defender, of Chicago (Dennis E. Urban, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Nancy Grauer Kisicki, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Amina Saeed, of counsel), guardian *ad litem*.

JUSTICE BUCKLEY delivered the opinion of the court:

Following an adjudicatory hearing, the trial court found that the minor Briana D.[1] had been physically abused and the minor Brian D.[2] had been neglected while in the care and custody of their mother, respondent Joyce T. After a dispositional hearing, the minors were placed in the guardianship of the Department of Children and Family Services (DCFS). Respondent contends on appeal that the minors should be returned to her custody because the trial court's finding that she was unable to care for them was against the manifest weight of the evidence.

This cause originated from events occurring on December 11, 1998. Respondent left the minors with her husband, Aaron T. When respondent returned that evening, Briana began complaining of a stomachache. Respondent took the minor to the hospital. The minor was transferred to another hospital where surgery was performed to repair her duodenal intestine, which had ruptured. The hospital performed a victim-sensitive interview during which the minor said Aaron T. had kicked her in the stomach. Citing the high potential for fatality from such an injury, the hospital diagnosed the minor as having been physically abused.

Subsequent investigation revealed that Aaron T. had four prior reports of child abuse registered against him with DCFS. Petitions for adjudication of wardship for both minors were filed. An adjudicatory hearing was held on July 8, 1999. The trial court found that Briana had been physically abused and that Brian had been neglected, having been placed in an injurious environment by respondent.

The trial court held a dispositional hearing on November 29, 1999. Dr. Michael Fernando, the medical director of clinical services of the agency to which respondent was assigned, was qualified as a psychiatric expert at this hearing. He testified that respondent's caseworker

[1]Briana D. is a female born on June 30, 1995, and was four years old at the time of the hearing.

[2]Brian D. is a male born on February 24, 1993, and was six years old at the time of the hearing. He is the brother of Briana D. Both minors were born of the same natural parents, respondent Joyce T. and Brian D., Sr., who was incarcerated in Texas at the time of this cause.

requested he do a full diagnostic evaluation of respondent due to the caseworker's observations of depression. After their first meeting, Dr. Fernando initially evaluated respondent as possibly having bipolar II disorder, cyclothymic disorder and major depressive disorder recurrent with psychosis. He prescribed mood stabilizing medication; respondent refused to take it, insisting there was nothing wrong with her. One month later, Dr. Fernando conducted a second psychiatric status interview with respondent. He testified that respondent had not taken any of the prescribed medication. During the interview, respondent would describe symptoms she was experiencing, including daily anxious and nervous episodes, but would then deny she had such symptoms. Dr. Fernando's final diagnosis concluded respondent had bipolar II disorder and he again recommended medication, the primary treatment for this disorder.

Sidney St. Leger, a clinical psychologist for 18 years, also testified. He conducted a psychological evaluation of respondent for the agency in order to determine whether she could provide competent care for the minors. St. Leger testified respondent did not believe Briana had really been injured, but rather the hospitals caring for her were participating in a cover-up; respondent showed no remorse and did not assume any responsibility for the minor's injuries. St. Leger evaluated respondent as "very angry and suspicious," diagnosing her with borderline personality disorder. He determined that she was not competent to provide independent parenting for the minors because she lacked skills, maturity and the ability to protect them. He did not order unsupervised visits and instead recommended respondent complete both a program of parenting skills and therapy, followed by a reevaluation.

Marla Lawrence, the agency supervisor assigned to the case, testified on respondent's behalf. Lawrence reviewed respondent's case file for a few weeks and discussed it with three other workers. Lawrence testified that respondent had been "substantially compliant" in completing the recommended services, visited the minors and made progress in therapy. Lawrence also testified that she felt the tension between Dr. Fernando and respondent had colored Dr. Fernando's evaluation of respondent and considered sending respondent to another doctor for a second opinion. Lawrence recommended returning the minors to respondent's care. However, Lawrence admitted on cross-examination that she knew Dr. Fernando diagnosed respondent with bipolar II disorder and prescribed necessary medication which respondent refused to take. Moreover, Lawrence knew respondent had not completed the therapy recommended by St. Leger, and Lawrence had not received any evaluations from respondent's therapist. Law-

rence did not know where or with whom respondent lived, never visited respondent's home and had never seen respondent interact with the minors. Lawrence never sent respondent to a second doctor, as she contemplated. Finally, Lawrence testified that one factor in the agency's determination of whether to return a minor to the parent's care is whether the parent accepts responsibility for how the minor was injured. Lawrence admitted that for the first seven months of this case, respondent denied Briana's injury and refused to accept any responsibility.

The trial court's dispositional order found respondent unable to care for the minors, made them wards of the court and appointed a DCFS guardian with the right to place them. In its decision, the court stated that it was "very upset" that "there would be a recommendation of return home" in light of the evidence presented. The court found Dr. Fernando to have been very credible. He was the only medical doctor to testify, he was the medical director of the very agency in charge of evaluating respondent and respondent never presented any medical evidence to contradict his medical opinion.

Respondent does not challenge the determination of abuse and neglect. Instead, the sole issue on appeal is whether the trial court's finding that respondent could not care for the minors was against the manifest weight of the evidence. Respondent contends that the minors should be returned to her care and custody because the trial court ignored Lawrence's "unrebutted" testimony that respondent is fit and able to care for the minors, improperly relied on Dr. Fernando's opinion and violated the best interests of the minors by removing them. We disagree.

In an adjudicatory hearing, the trial court has the opportunity to hear and see the witnesses testifying before it and is "in the best position to determine the credibility and weight of the witnesses' testimony." *In re A.P.*, 179 Ill. 2d 184, 204 (1997). The court is also in the best position to determine the best interest of a minor (*In re Marriage of Divelbiss*, 308 Ill. App. 3d 198, 207 (1999)), the central standard in cases such as the instant one (*In re Stilley*, 66 Ill. 2d 515, 521 (1977)). A minor's best interest stands independent of all other considerations, even that of a parent's right to custody. *In re J.L.*, 308 Ill. App. 3d 859, 864 (1999).

■ The trial court is given "broad discretion" (*Stilley*, 66 Ill. 2d at 520) and "great deference" (*Marriage of Divelbiss*, 308 Ill. App. 3d at 207) in matters involving minors. See *In re Marriage of Valliere*, 275 Ill. App. 3d 1095, 1100 (1995) (trial court vested with significant discretion in child custody matters); *In re D.L.*, 226 Ill. App. 3d 177, 185 (1992), quoting *In re Martin*, 31 Ill. App. 3d 288, 293 (1975) (" 'wide

discretion is vested in the trial judge to an even greater degree than any ordinary appeal to which the familiar manifest weight principle is applied' "). Accordingly, a dispositional order finding a parent unable to care for a minor will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991).

■ Under the Juvenile Court Act of 1987, the trial court in a dispositional hearing determines whether it is in the minor's best interest to be made a ward of the court. 705 ILCS 405/2—22(1) (West 1998). The court also determines whether the minor's parent is fit to care for her (705 ILCS 405/2—27(1) (West 1998)) and whether custody of an abused or neglected minor should be restored to the parent (705 ILCS 405/2—23(1)(a) (West 1998)). As part of these determinations, the court must consider any qualified and competent medical testimony presented regarding the minor and her custodial situation. *J.L.*, 308 Ill. App. 3d at 865. In fact, where such medical evidence is not offset or contradicted by other competent medical evidence, the court cannot disregard it. *In re Ashley K.*, 212 Ill. App. 3d 849, 890 (1991) (it is error for the court to "second-guess medical experts"). Challenging medical expert testimony is the responsibility of its opponent. *Adams v. Family Planning Associates Medical Group, Inc.*, 315 Ill. App. 3d 533, 550 (2000). The ultimate determination of weight afforded such testimony lies with the trier of fact. *Adams*, 315 Ill. App. 3d at 550.

*Ashley K.* and *In re Marcus H.*, 297 Ill. App. 3d 1089, 1097 (1998), are illustrative of these legal principles. In *Ashley K.*, two psychiatrists testified that the minor involved required continuing psychotherapy and visitation with her foster parents. However, the minor's therapist disagreed with these qualified experts. The trial court accepted the therapist's testimony and ordered the minor to cease therapy and visitation. However, finding that competent expert medical evidence cannot be refuted by nonmedical testimony, this court held that rejecting such medical testimony was error. *Ashley K.*, 212 Ill. App. 3d at 889-90. Similarly, in *Marcus H.*, this court found error where a doctor's competent expert medical opinion that the minor's burns were the result of abuse was disregarded absent medical evidence to the contrary. *Marcus H.*, 297 Ill. App. 3d at 1097; see also *People v. Cooper*, 283 Ill. App. 3d 86, 93 (1996) (trial court properly held that minor's burns were not accidental when no contrary expert medical evidence was presented).

■ The instant case is very similar to *Ashley K.* and *Marcus H.* The trial court found Dr. Fernando, who was qualified as a psychiatric expert at the dispositional hearing, to have been very credible.

Significantly, respondent presented absolutely no competent medical testimony or evidence to contradict the testimony of Dr. Fernando, his diagnosis that respondent has bipolar II disorder or his recommendation that she take necessary medication prescribed to her, the primary treatment for this disorder.

Respondent claims that the trial court improperly relied on Dr. Fernando's opinion because he was not a parenting expert, he did not contradict Lawrence's testimony of respondent's fitness and St. Leger diagnosed respondent as having a different disorder not requiring medication. First, the purpose of Dr. Fernando's evaluation of respondent was not to determine her parenting skills. Instead, as a psychiatrist, he was asked by her caseworker to complete a personal psychiatric evaluation because respondent was exhibiting signs of depression. Whether Dr. Fernando is a parenting expert is not relevant to his psychiatric diagnosis of respondent or to this cause.

Second, Lawrence's testimony did not directly contradict Dr. Fernando's medical opinion; Lawrence testified as to respondent's fitness to care for the minors (contradicted by St. Leger) while Dr. Fernando testified as to respondent's general need to be on medication. Though Lawrence disagreed with Dr. Fernando's diagnosis, this is the only testimony in the entire record in such disagreement. Moreover, this testimony is nonmedical. Lawrence was respondent's caseworker, not a medical doctor, and therefore does not have the credentials to refute the expert medical opinion of Dr. Fernando. Moreover, Lawrence reviewed respondent's case file for only a few weeks. She knew respondent needed medication and was not taking it. She never sent respondent to a second doctor when she felt personal tensions had colored Dr. Fernando's diagnosis. She knew respondent was supposed to complete therapy but had not. She never spoke to respondent's therapist or requested any reports. She knew respondent denied for several months that Briana was injured. Lawrence has never seen respondent interact with the minors and does not even know respondent's address or with whom she lives.

Finally, Dr. Fernando's opinion was not contradicted by St. Leger as respondent claims. St. Leger's psychological evaluation had a different purpose, that is, to assess whether respondent could provide competent care for the minors, which he found she could not. St. Leger is not of the same medical discipline as Dr. Fernando. But while his diagnosis may have been different, it was not contradictory. It was, however, in direct contradiction to Lawrence's opinion of fitness. Though St. Leger is not a medical doctor and cannot prescribe medication, he has been a psychologist for 18 years. He recommended respondent complete parenting classes and therapy and be reevaluated

before return of the minors to her custody could even be considered. Lawrence, who lacks qualifications similar to those of St. Leger, admitted respondent did not comply completely with these recommendations.

The trial court did not ignore Lawrence's testimony, as respondent argues. The court found that her nonmedical testimony, to the extent it contradicted the "very credible" expert medical testimony of Dr. Fernando and the qualified testimony of St. Leger, had no bearing. Simply put, respondent presented no competent testimony to contradict that of Dr. Fernando and St. Leger.

■ The trial court exercised its wide discretion in this custody matter after having observed the witnesses and considering uncontradicted expert medical testimony. In light of the record, the court's holding that it was in the best interest of Briana D. and Brian D. to become wards of the court, as respondent was unable to care for them, was not against the manifest weight of the evidence. Therefore, we find no reason to disturb these findings on appeal.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

O'BRIEN and GALLAGHER, JJ., concur.